**AKIN GUMP STRAUSS HAUER & FELD LLP**
LAURA D. SMOLOWE (SBN 263012)
lsmolowe@akingump.com
LAUREN E. HUENNEKENS (SBN 328855)
lhuennekens@akingump.com
1999 Avenue of the Stars, Suite 600
Los Angeles, CA 90067
Telephone: +1 310.229.1000
Facsimile: +1 310.229.1001

**AKIN GUMP STRAUSS HAUER & FELD LLP**
ASHLEY VINSON CRAWFORD (SBN 257246)
avcrawford@akingump.com
FATIMA BISHTAWI (SBN 363224)
fbishtawi@akingump.com
100 Pine Street, Suite 3200
San Francisco, CA 94111
Telephone: +1 415.765.9500
Facsimile: +1 415.765.9501

**AKIN GUMP STRAUSS HAUER & FELD LLP**
ELIZABETH SCOTT (*pro hac vice*)
edscott@akingump.com
2300 N. Field Street, Suite 1800
Dallas, TX 75201
Telephone: +1 214.969.2800
Facsimile: +1 214.969.4343

Attorneys for Defendant
LENOVO (UNITED STATES) INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| SPENCER CHRISTY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LENOVO (UNITED STATES) INC.,<br><br>Defendant. | Case No. 3:26-cv-01133-CRB<br><br>**DEFENDANT LENOVO (UNITED STATES) INC.'S NOTICE OF MOTION AND MOTION TO COMPEL INDIVIDUAL ARBITRATION AND STAY PROCEEDINGS PENDING ARBITRATION**<br><br>Date: September 11, 2026<br>Time: 10:00 a.m.<br>Location: Courtroom 6 – 17th Floor<br><br>Date Action Filed: February 5, 2026 |

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION (CIVIL L.R. 7-2(B)(2)) .......... 1
RELIEF REQUESTED (CIVIL L.R. 7-2(B)(3)) .......... 1
SUMMARY OF ARGUMENT (GENERAL STANDING ORDER § I(C)) .......... 1
MEMORANDUM OF POINTS AND AUTHORITIES .......... 3
I. INTRODUCTION .......... 3
II. FACTUAL BACKGROUND .......... 4
A. Plaintiff Accepted Lenovo's Sales Agreement. .......... 4
B. The Sales Agreement Provides for Mandatory, Individual Arbitration and Waiver of the Right to Arbitrate on a Class-Wide Basis. .......... 5
C. Plaintiff Declines to Opt Out of The Arbitration Agreement. .......... 7
D. Plaintiff Now Improperly Pursues This Lawsuit Against Lenovo. .......... 7
III. STATEMENT OF ISSUES TO BE DECIDED (CIVIL L.R. 7-4(A)(3)) .......... 7
IV. LEGAL STANDARD .......... 8
V. ARGUMENT .......... 9
A. Plaintiff Entered a Valid, Binding Agreement to Arbitrate His Claims on an Individual Basis and is Bound By its Terms. .......... 9
1. Plaintiff was Provided Reasonably Conspicuous Notice of the Sales Agreement. .......... 10
2. Plaintiff Unambiguously Manifested His Assent to the Sales Agreement. .......... 11
3. The Arbitration Agreement was Validly Incorporated by Reference into the Sales Agreement. .......... 12
B. Plaintiff's Claims Are Subject to Arbitration. .......... 13
1. The Parties Delegated Enforceability and Arbitrability to the Arbitrator. .......... 13
2. Plaintiff's Claims Fall Within the Scope of the Binding Arbitration Agreement. .......... 14
C. The Court Must Stay This Case Pending Arbitration. .......... 15
VI. CONCLUSION .......... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) .... 8, 13

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986) .... 8, 9, 15

*Berman v. Freedom Fin. Network*,
30 F.4th 849 (9th Cir. 2022) .... 2, 9, 10

*Blau v. AT&T Mobility*,
2012 WL 10546 (N.D. Cal. Jan. 3, 2012) (Breyer, J.) .... 15

*Citizens Bank v. Alafabco, Inc.*,
539 U.S. 52 (2003) (per curiam) .... 8

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985) .... 8

*Dohrmann v. Intuit, Inc.*,
823 F. App'x 482 (9th Cir. 2020) .... 2, 11

*Envisage Dev. Partners, LLC v. Patch of Land Lending, LLC*,
2017 WL 4551575 (N.D. Cal. Oct. 11, 2017) (Breyer, J.) .... 8, 9

*Green Tree Fin. Corp.-Ala. v. Randolph*,
531 U.S. 79 (2000) .... 9

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019) .... 13

*Jameson v. Ringside Dev. Co.*,
2025 WL 562889 (N.D. Cal. Feb. 20, 2025) (Breyer, J.) .... 2, 14

*Johnmohammadi v. Bloomingdale's Inc.*,
755 F.3d 1072 (9th Cir. 2014) .... 13

*Kamath v. Coinbase, Inc.*,
2024 WL 950163 (N.D. Cal. Mar. 5, 2024) (Breyer, J.) .... 10

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005 (9th Cir. 2024) .... 2, 11

*Lee v. Ticketmaster L.L.C.*,
817 F. App'x 393 (9th Cir. 2020) .... 10

*Mitsubishi Motors Corp. v. Solar Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985) .... 9

*Mohammed v. Uber Techs, Inc.*,
848 F.3d 1201 (9th Cir. 2016) ....12, 13

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)....8, 14

*Nixon v. Vegas.com, LLC*,
2025 WL 3719885 (N.D. Cal. Dec. 23, 2025)....11

*Norris v. Aon PLC*,
2021 WL 1238303 (N.D. Cal. Apr. 2, 2021) (Breyer, J.) ....2, 13

*Patrick v. Running Warehouse, LLC*,
93 F.4th 468 (9th Cir. 2024) ....2, 14

*Rent-A-Center, W., Inc. v Jackson*,
561 U.S. 63 (2010)....13

*Schleuter-Beckner v. SimpliSafe, Inc.*,
2025 WL 2162948 (N.D. Cal. July 30, 2025)....11

*Smith v. Spizzirri*,
601 U.S. 472 (2024)....3, 15

*Taylor v. Inflection Risk Sols., LLC*,
808 F. Supp. 3d 981 (N.D. Cal. 2025) (Breyer, J.) ....9

*United States v. Sutcliffe*,
505 F.3d 944 (9th Cir. 2007) ....8

*Van Den Heuvel v. Expedia Travel*,
2017 WL 5133270 (E.D. Cal. Nov. 6, 2017)....2, 11

*Whalen v. NBA Props., Inc.*,
2025 WL 1948591 (N.D. Cal. July 16, 2025) (Breyer, J.).... *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)....3

## NOTICE OF MOTION AND MOTION (CIVIL L.R. 7-2(B)(2))

**PLEASE TAKE NOTICE** that on September 11, 2026, at 10:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Charles Robert Breyer, Courtroom 6 – 17th Floor, located at United States District Court for the Northern District of California, San Francisco Division, 450 Golden Gate Avenue, San Francisco, California 94102, Defendant Lenovo (United States) Inc. ("Lenovo") will and hereby does move for an order compelling individual arbitration of Plaintiff Spencer Christy's claims and staying these proceedings pending resolution of any resulting arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*("FAA"). This Motion is based upon this Notice of Motion and Motion, Memorandum of Points and Authorities, the Declaration of Kevin Morey and the exhibits attached thereto, the Declaration of Laura D. Smolowe, the Court's files in this action, the arguments of counsel, and any other matter that the Court may consider.

## RELIEF REQUESTED (CIVIL L.R. 7-2(B)(3))

Pursuant to the FAA, Lenovo requests that the Court compel Plaintiff to arbitrate his claims against Lenovo on an individual basis and stay these proceedings pending resolution of any resulting arbitration. Lenovo further requests that the matter be stayed pending resolution of Lenovo's motion to compel arbitration.

## SUMMARY OF ARGUMENT (GENERAL STANDING ORDER § I(C))[1]

When Plaintiff purchased a computer on Lenovo's website in December 2025, he accepted Lenovo's Sales Agreement, which contains a binding Arbitration Agreement governed by the FAA that requires Plaintiff to individually arbitrate "any dispute" between Plaintiff and Lenovo "related to" (1) Plaintiff's "use of any Lenovo website," (2) "Lenovo's Privacy Policy," (3) Plaintiff's "purchase experience," and (4) "any aspect of the relationship" between Plaintiff and Lenovo, among other things. Declaration of Kevin Morey in Supp. of Motion to Compel Arb. ("Morey Decl."), Ex. 3. Plaintiff's

---

[1] Pursuant to Judge Breyer's General Standing Order for Civil and Criminal Cases ("General Standing Order"), Lenovo has included this summary of argument as its brief exceeds 10 pages in length. Lenovo understands that per the General Standing Order, this summary of argument does not count towards the 15 page limit for this brief. See General Standing Order § I(C).

attempt to bring this case on a class-wide basis in this Court should be rejected, and the motion to compel individual arbitration should be granted.

Plaintiff was provided conspicuous notice of the Sales Agreement. *Berman v. Freedom Fin. Network*, 30 F.4th 849, 855-56 (9th Cir. 2022). Directly below the "Place Order" button that Plaintiff selected to complete his online purchase was the following language: "I have read and agree to the Privacy Policy, Lenovo Sales Agreement & verify that I am over the age of 18." Morey Decl., ¶¶ 9-10. The notice was in the same size font and format as the surrounding text, in a black font that contrasted with the white background, a standalone sentence on an uncluttered webpage, and used underlined hyperlinks to distinguish them from the surrounding text. *Id.* ¶¶ 9-11; *see*, *e.g.*, *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1020-21 (9th Cir. 2024); *Whalen v. NBA Props., Inc.*, 2025 WL 1948591, at *5-6 (N.D. Cal. July 16, 2025) (Breyer, J.); *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 484 (9th Cir. 2020). By selecting "Place Order," Plaintiff unambiguously manifested his assent. *See Van Den Heuvel v. Expedia Travel*, 2017 WL 5133270, at *2-3 (E.D. Cal. Nov. 6, 2017), *report and recommendation adopted*, 2017 WL 6512945 (E.D. Cal. Dec. 20, 2017).

The Arbitration Agreement was validly incorporated by reference into the Sales Agreement. The reference to the Arbitration Agreement in the Sales Agreement was clear and unequivocal, printed in capitalized letters with bold and underlined hyperlink, and was easily available to Plaintiff by clicking the hyperlink. Morey Decl., Ex. 2; *see Whalen*, 2025 WL 1948591, at *6.

Plaintiff's claims are thus subject to arbitration. The parties clearly and unmistakably delegated all threshold issues related to enforceability and arbitrability to the arbitrator: "disputes over enforceability of any provision . . . and disputes over whether a particular claim is arbitrable" are "disputes" that "must be resolved by the arbitrator." Morey Decl., Ex. 3; *see Norris v. Aon PLC*, 2021 WL 1238303, at *5 (N.D. Cal. Apr. 2, 2021) (Breyer, J.). The parties also adopted the JAMS Rules, further evidencing the parties' clear and unmistakable intent to delegate gateway issues of enforceability and arbitrability to the arbitrator. *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 481 (9th Cir. 2024); *Jameson v. Ringside Dev. Co.*, 2025 WL 562889, at *3 (N.D. Cal. Feb. 20, 2025) (Breyer, J.) (same). Even setting aside the delegation clause, Plaintiff's claims plainly fall within the scope of the Arbitration

Agreement as his claims relate to his use of the Lenovo website, Lenovo's Privacy Policy, his purchase of a Lenovo computer, his purchase experience on the website, and his relationship with Lenovo more generally. Compl. ¶¶ 95-106; *see* Morey Decl., Ex. 3.

Therefore, the Court should compel Plaintiff to individually arbitrate his claims against Lenovo. Further, this Court should stay this action pending any resulting arbitration. 9 U.S.C. § 3; *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024).

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiff Spencer Christy alleges that he visited Lenovo's website at www.lenovo.com/us/en (the "Website") in late 2025 and purchased a Lenovo gaming computer. When Plaintiff made this purchase, he accepted Lenovo's Sales Agreement, which contains a binding arbitration agreement that requires Plaintiff to arbitrate his claims on an individual basis. In violation of this Sales Agreement, Plaintiff now brings this lawsuit on behalf of a nationwide putative class and two putative subclasses, alleging that while he was engaging with and using the Website, certain cookies on the Website collected his data in violation of federal and state law. Notably, Plaintiff was provided notice of the precise conduct that he now alleges is unlawful and consented to the same.

Lenovo separately brought a motion to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) because the claims lack merit. But this Court need not address the merits at all, as Plaintiff's claims are clearly governed by the Sales Agreement that he accepted when he purchased his Lenovo computer. Indeed, the Federal Arbitration Act requires that this Court refer this proceeding to arbitration. Plaintiff was provided conspicuous notice of the Sales Agreement prior to his purchase and he affirmatively accepted the Sales Agreement in order to complete his purchase. The Sales Agreement included an Arbitration Agreement which broadly covers "any dispute" between Plaintiff and Lenovo "related to" (1) Plaintiff's "use of any Lenovo website," (2) "Lenovo's Privacy Policy," (3) Plaintiff's "purchase experience," and (4) "any aspect of the relationship" between Plaintiff and Lenovo, among other things. Morey Decl., Ex. 3. And here, each of Plaintiff's claims plainly relates to these topics. Further, the Arbitration Agreement requires that all disputes related to enforceability and arbitrability be

resolved by the arbitrator. *Id.* In addition, lest there was any doubt Plaintiff intended to accept the Arbitration Agreement, he was provided an opportunity to opt out of the same, but he declined to do so. *Id.*, ¶¶ 25-26; *see also id.*, Ex. 3.

Lenovo, therefore, respectfully requests that the Court compel Plaintiff to arbitrate his claims on an individual basis. Lenovo further requests that the Court stay this action in its entirety pending any resulting arbitration proceeding, as is mandatory pursuant to the FAA.

## II. FACTUAL BACKGROUND

### A. Plaintiff Accepted Lenovo's Sales Agreement.

Lenovo "makes, markets, and sells computers, computer accessories, and related products like tablets, monitors, servers, and storage." Compl. ¶ 26. Plaintiff alleges that in November and December of 2025, he visited the Website on multiple occasions—navigating product pages and searching the Website for a Legion Tower 7i Gen 10 (Intel) with RTX™ 5080, a gaming computer. *Id.* ¶¶ 95-96.

Plaintiff alleges that while viewing the Website, his browser loaded so-called third-party "Tracking Technologies"—i.e., cookies or scripts—that Lenovo supposedly deployed on its Website, which collected certain of his data. *Id.* ¶¶ 13, 57-58, 64. Plaintiff alleges that Lenovo subsequently used his data for its own purposes, *id.* ¶¶ 13-14, 127, 134, and transferred his data to its parent company, Lenovo Group Limited, "a Hong Kong-incorporated multinational technology company with its principal corporate operations headquartered in Beijing, China." *Id.* ¶ 27.

Plaintiff ultimately purchased the Legion Tower 7i Gen 10 (Intel) with RTX™ 5080. *Id.* ¶ 97. When Plaintiff made this purchase, Plaintiff accepted Lenovo's Sales Agreement. Morey Decl., ¶¶ 4-13.

To complete his online purchase, Plaintiff was required first to add the computer to his cart and select "Proceed to Checkout." *Id.* ¶¶ 5-6. Plaintiff then was taken to a new webpage where he was directed to enter his contact information, including his name and email address, at which point he selected "Continue to Delivery." *Id.* ¶ 7. A subsequent set of fields then appeared, allowing Plaintiff to fill in his delivery address and select his shipping method, at which point he selected "Continue to Review & Pay." *Id.* ¶ 8. This prompted the "Review & Pay" fields to appear, allowing Plaintiff to enter his billing address, select his payment method, and provide his credit card information. *Id.* ¶ 9.

Plaintiff was given conspicuous notice of the Sales Agreement. Immediately below the "Place Order" button, in black font contrasting with the white background of the same size as the surrounding text, Lenovo's Website reads: "I have read and agree to the Privacy Policy, Lenovo Sales Agreement, & verify that I am over the age of 18." *Id.* ¶¶ 9-10 (emphasis in original). The Lenovo Sales Agreement was underlined and hyperlinked, differentiating it from the surrounding text. *Id.* ¶¶ 9-11.

Clicking the "Lenovo Sales Agreement" hyperlink leads to a webpage containing the Sales Agreement.[2] *Id.* ¶ 12. The opening preamble of the Sales Agreement advised "PLEASE READ THE LENOVO SALES AGREEMENT BELOW CAREFULLY." *Id.*, Ex. 2. It further made clear that "BY PLACING AN ORDER ON LENOVO.COM OR ACCEPTING PRODUCTS SUBJECT TO THIS AGREEMENT, YOU ('YOU' OR 'CUSTOMER') ACKNOWLEDGE THAT YOU HAVE READ THIS AGREEMENT; UNDERSTAND IT; AND THAT YOU AGREE TO BE LEGALLY BOUND BY ITS TERMS AND CONDITIONS." *Id.*

Plaintiff was required to complete a reCAPTCHA and select "Place Order" in order to complete his purchase, affirming his acceptance of the Sales Agreement. *Id.* ¶¶ 9-10, 13.

### B. The Sales Agreement Provides for Mandatory, Individual Arbitration and Waiver of the Right to Arbitrate on a Class-Wide Basis.

The Sales Agreement is explicit:

> THIS AGREEMENT IS SUBJECT TO A REQUIREMENT THAT DISPUTES MUST BE RESOLVED IN BINDING, INDIVIDUAL ARBITRATION, NOT IN COURT. THERE IS NO JUDGE OR JURY IN ARBITRATION AND PRETRIAL DISCOVERY AND APPELLATE RIGHTS ARE MORE LIMITED THAN IN COURT. YOU HAVE A LIMITED-TIME RIGHT TO OPT OUT OF THIS REQUIREMENT. SEE THE **ARBITRATION AGREEMENT PAGE** FOR FULL DETAILS AND OPT-OUT INSTRUCTIONS.

*Id.*, Ex. 2 (emphasis in original). The hyperlink to the "Arbitration Agreement Page" is bolded and underlined. *Id.*

The Arbitration Agreement, in turn, includes a heading specifying as follows:

> **THIS ARBITRATION AGREEMENT ("AGREEMENT") INCLUDES A REQUIREMENT THAT DISPUTES BETWEEN YOU**

---

[2] https://www.lenovo.com/us/en/terms-and-conditions/.

> **AND LENOVO MUST BE RESOLVED IN BINDING, INDIVIDUAL ARBITRATION. THIS MEANS WE GIVE UP THE RIGHTS TO TAKE A DISPUTE TO COURT OR TO PURSUE A CLASS ACTION. THERE IS NO JUDGE OR JURY IN ARBITRATION AND PRETRIAL DISCOVERY AND APPELLATE RIGHTS ARE MORE LIMITED THAN THEY WOULD BE IN COURT. YOU HAVE A LIMITED-TIME RIGHT TO OPT OUT OF THIS REQUIREMENT. PLEASE READ THIS ENTIRE AGREEMENT CAREFULLY.**

Morey Decl., Ex. 3 (emphasis in original). The Arbitration Agreement then provides that any "Dispute" must be resolved through individual arbitration:

> To the maximum extent allowed by applicable law, you and Lenovo agree that any dispute related to any aspect of the relationship between us, including but not limited to any Lenovo or third party product, software, or service you purchase from Lenovo, the associated purchase agreement, Lenovo's Privacy Policy, your purchase experience, and your use of any Lenovo website, application, or tool, asserted under any legal theory (collectively "Disputes"), including claims that accrued before you entered into this Agreement and any "private attorney general" claims, will be exclusively resolved by binding arbitration.

*Id.*

The Arbitration Agreement explicitly states that it is "governed by the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*" *Id*. And further, the Arbitration Agreement requires that "[a]ny arbitration between us will be administered by JAMS pursuant to its applicable rules, as modified by this Agreement." *Id*. The Arbitration Agreement also requires that any "Disputes" related to (a) "enforceability of any provision of any agreement between you and Lenovo, except for interpretation of this Agreement's class action waiver," and (b) "whether a particular claim is arbitrable" must be "resolved by the arbitrator, and not a court." *Id*. (emphasis omitted). The Arbitration Agreement further requires that any arbitration be conducted on an individual basis. *Id.* ("**DISPUTES BETWEEN YOU AND LENOVO MUST BE RESOLVED IN BINDING, INDIVIDUAL ARBITRATION . . . Lenovo does not consent to have any dispute arbitrated pursuant to class arbitration procedures.**") (emphasis in original).[3]

[3] The Arbitration Agreement also contains a class action waiver applicable to non-arbitrable claims, which requires Plaintiff to pursue any and all claims that proceed in this court in an individual capacity. Morey Decl., Exs. 2, 3. To the extent the Court denies Lenovo's Motion to Compel Arbitration, Lenovo has separately moved to enforce that provision. *See* ECF 31.

**C. Plaintiff Declines to Opt Out of The Arbitration Agreement.**

Plaintiff had an opportunity to opt out of the Arbitration Agreement. Specifically, the Arbitration Agreement provided that "within thirty (30) days of [his] purchase," Plaintiff was able to "send a written notice that includes [his] name, address, phone number, and product serial number, and tell[] Lenovo that [he is] rejecting or opting out" of the Arbitration Agreement." *Id.* Lenovo has no record of Plaintiff ever doing so. *Id.* ¶ 26.

The Arbitration Agreement also provides for a pre-dispute meet and confer process:

> Most Disputes can be resolved quickly and amicably. To advise Lenovo of a Dispute, you must send a Notice of Dispute to "Legal Department: Notice of Dispute, Lenovo (US), Inc., 8001 Development Drive, Morrisville NC 27560," or by email to arbitrat@motorola.com. Your Notice of Dispute must include your name, contact information, an explanation of the Dispute, and what you want Lenovo to do to resolve the problem. Lenovo will contact you and attempt in good faith to negotiate a resolution. You or we may not commence an arbitration until 30 days after provision of a Notice of Dispute.

*Id.*, Ex. 3. Lenovo has no record of Plaintiff attempting to resolve his dispute with Lenovo as required. *Id.* ¶ 28.

**D. Plaintiff Now Improperly Pursues This Lawsuit Against Lenovo.**

The Sales Agreement requires that all disputes be brought in individual arbitration (*see* Section II.B, *supra*) and precludes representative claims in any form. Morey Decl., Exs. 2, 3. Nevertheless, Plaintiff pursues in this Court eight claims against Lenovo on behalf of a nationwide class, a California subclass, and a California purchaser subclass "whose electronic communications with the Website were intercepted and whose communications and personal data—including persistent identifiers and behavioral activity—was used on or after April 8, 2025." Compl. ¶ 107.

On April 15, 2026, the parties met and conferred regarding Lenovo's anticipated motion to compel arbitration. Declaration of Laura D. Smolowe in Supp. of Mot. to Compel Arb., ¶ 2. Lenovo requested that Plaintiff dismiss his Complaint with prejudice in light of the binding arbitration agreement, and Plaintiff declined to do so. *Id.*

## III. STATEMENT OF ISSUES TO BE DECIDED (CIVIL L.R. 7-4(A)(3))

1. Should Plaintiff be compelled to arbitrate his claims on an individual basis?
2. Should this proceeding be stayed pending resolution of any resulting arbitration?

## IV. <u>LEGAL STANDARD</u>

The FAA applies to written provisions in "contract[s] evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . ." 9 U.S.C. § 2. Both criteria are met here. The Sales Agreement and Arbitration Agreement are in writing (*see* Morey Decl., Exs. 2-3) and evidence a transaction in interstate commerce; namely, Plaintiff's use of Lenovo's Website through which Lenovo, a Delaware corporation with its principal place of business in North Carolina (Compl. ¶ 20), sells its products throughout the country, including to Plaintiff (*id.* ¶ 97), a California resident (*id.* ¶ 19). *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (per curiam) (the phrase "involving commerce" is "the functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest possible exercise of Congress' Commerce Clause power"); *United States v. Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007) (the internet is "an instrumentality and channel of interstate commerce") (citation omitted). Indeed, the Arbitration Agreement explicitly invokes the FAA. Morey Decl., Ex. 3 ("[T]his Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*"). Accordingly, the FAA and related substantive law govern.

The FAA reflects a "liberal federal policy favoring arbitration," intended to reverse the "widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court[] but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues" an arbitration agreement covers. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). Thus, the FAA "requires that [courts] rigorously enforce" arbitration agreements. *Id.* at 221.

Accordingly, when a "contract contains an arbitration clause, there is a presumption of arbitrability[.]" *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). "[A]s a matter of federal law, any doubts" concerning a dispute's arbitrability "should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Envisage Dev. Partners, LLC v. Patch of Land Lending, LLC*, 2017 WL 4551575, at *5 (N.D. Cal. Oct. 11, 2017) (Breyer, J.). Enforcement of an arbitration agreement "should not be denied unless it may be said with positive assurance that [it] is not susceptible of an interpretation that covers the asserted

dispute." *AT&T Techs.*, 475 U.S. at 650. The party opposing a motion to compel arbitration bears the significant burden "of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000); *see also Envisage*, 2017 WL 4551575, at *5.

## V. ARGUMENT

This Court's role in deciding Lenovo's motion to compel arbitration is narrow, and focused only on two threshold issues: (1) whether Plaintiff and Lenovo entered into a valid arbitration agreement and (2) whether the claims asserted fall within the scope of that agreement. *Envisage*, 2017 WL 4551575, at *5; *see also Mitsubishi Motors Corp. v. Solar Chrysler-Plymouth, Inc.*, 473 U.S. 614, 627-28 (1985). Here, both elements are indisputably satisfied. Thus, this Court should compel arbitration of Plaintiff's claims on an individual basis and stay this litigation pending resolution of arbitration.

### A. Plaintiff Entered a Valid, Binding Agreement to Arbitrate His Claims on an Individual Basis and is Bound By its Terms.

"When determining whether an arbitration agreement is valid and enforceable, federal courts apply state contract law." *Taylor v. Inflection Risk Sols., LLC*, 808 F. Supp. 3d 981, 984 (N.D. Cal. 2025) (Breyer, J.). "In California, a valid contract exists where: (1) the parties are capable of contracting; (2) there was mutual assent; (3) the contract had a lawful object; and (4) the contract is supported by sufficient cause or consideration."[4] *Id.* (citing Cal. Civ. Code § 1550). There can be no question that Plaintiff and Lenovo are capable of contracting, that the Sales Agreement had a lawful object (the sale of the computer), and that the Sales Agreement is supported by sufficient consideration (the purchase price). Compl. ¶ 97. Thus, the only question before this Court is whether there was mutual assent.

The same "elemental principles of contract formation apply with equal force to contracts formed online." *Berman*, 30 F.4th at 855-56. "Thus, if a website offers contractual terms to those who use the site, and a user engages in conduct that manifests her acceptance of those terms, an enforceable agreement

---

[4] The Sales Agreement contains a provision selecting New York law for all matters not governed by the FAA. Morey Decl., Ex. 2 § 9.6. Whether California or New York law governs contract formation here is irrelevant as California law and New York law are the same in all material respects on the issue of contract formation. *See Whalen*, 2025 WL 1948591, at *3 n.1 (in deciding motion to compel arbitration, finding choice-of-law provision adopting New York law to be "immaterial at this stage," as "'New York and California apply substantially similar rules for determining whether the parties have mutually assented to a contract term'") (quoting *Berman*, 30 F.4th at 855).

can be formed." *Id*. at 856. Here, the Sales Agreement is a clickwrap agreement, to which Plaintiff manifested his assent by selecting "Place Order." Morey Decl., ¶¶ 9-13; *see Berman*, 30 F.4th at 856 (a clickwrap agreement is made formed when "a website presents users with specified contractual terms . . . and users must check a box explicitly stating 'I agree' in order to proceed."). "The precise label does not matter; so long as the agreement gave reasonably conspicuous notice and Plaintiff manifested assent, there was an agreement." *Kamath v. Coinbase, Inc.*, 2024 WL 950163, at *4 n.3 (N.D. Cal. Mar. 5, 2024) (Breyer, J.). "[A]n enforceable contract will be found based on an inquiry notice" where (1) "the website provides reasonably conspicuous notice of the terms to which the consumer will be bound"; and (2) "the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Berman*, 30 F.4th at 856. Plaintiff need not have actually read the Sales Agreement to be bound by it—all that is required is that Plaintiff had an opportunity to review it. *Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 395 (9th Cir. 2020) (affirming grant of motion to compel arbitration, as a plaintiff "cannot avoid the terms of the contract on the ground that he failed to read it before signing, especially when he had a legitimate *opportunity* to review it") (citation modified).

1. Plaintiff was Provided Reasonably Conspicuous Notice of the Sales Agreement.

Here, Plaintiff was provided reasonably conspicuous notice of the Sales Agreement. Directly below the "Place Order" button was the following language: "I have read and agree to the Privacy Policy, Lenovo Sales Agreement & verify that I am over the age of 18." Morey Decl., ¶¶ 9-10. The notice was in the same size font and format as the surrounding text and therefore was "displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Berman*, 30 F.4th at 856; *see* Morey Decl., ¶¶ 9-11. The notice also utilized a contrasting font color—black—as compared to the background—white. *See* Morey Decl., ¶¶ 9-11. The notice was in a standalone sentence on a webpage lacking in clutter. *See id.* And, the hyperlink was underlined, distinguishing it from the surrounding text.[5] *See id.*

[5] Further, "the full context of any transaction is critical to determining whether any particular notice is sufficient to put a consumer on inquiry notice of contractual terms contained on a separate, hyperlinked page." *Whalen v. NBA Props., Inc.*, 2025 WL 1948591, at *4 (N.D. Cal. July 16, 2025) (Breyer, J.) (quoting *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 453 (2021)). "[W]hether the user

(*Cont'd on next page*)

Courts have found analogous notices to be reasonably conspicuous, compelling arbitration as a result. *See*, *e.g.*, *Keebaugh*, 100 F.4th at 1020-21 (notice was reasonably conspicuous where notice of Terms of Use was provided "[d]irectly beneath the operative Play button," the notice used "a contrasting font color making [it] legible on the dark background," and the screen "lack[ed] clutter"); *Whalen*, 2025 WL 1948591, at *5-6 (reasonably conspicuous notice where Subscriber Agreement was "contained within a short paragraph in dark grey text against a white background," located "directly above the 'Agree and Subscribe' button," and "[t]he hyperlinks [were] underlined"); *Dohrmann*, 823 F. App'x at 484 (reasonably conspicuous notice where Terms of Use "were the only text on the webpage in italics, located directly below the sign-in button, and the sign-in page was relatively uncluttered").[6]

2. Plaintiff Unambiguously Manifested His Assent to the Sales Agreement.

The Sales Agreement explicitly informed Plaintiff in its opening preamble that "BY PLACING AN ORDER ON LENOVO.COM OR ACCEPTING PRODUCTS SUBJECT TO THIS AGREEMENT, YOU . . . ACKNOWLEDGE THAT YOU HAVE READ THIS AGREEMENT; UNDERSTAND IT; AND THAT YOU AGREE TO BE LEGALLY BOUND BY ITS TERMS AND CONDITIONS." Morey Decl., Ex. 2. By affirmatively selecting "Place Order," Plaintiff manifested his assent that "[he] ha[d] read and agree[d] to the . . . Lenovo Sales Agreement" as stated directly below the "Place Order" button. Morey Decl., ¶¶ 9-10, 13; *see Van Den Heuvel*, 2017 WL 5133270, at *2-3 (compelling arbitration where plaintiff was "required to acknowledge that he 'read and accepted'" the agreement "before purchasing the airline ticket" and "affirmatively assented" to it "by clicking the 'complete booking' button").

provides their credit card"—as Plaintiff did here, *see* Morey Decl., ¶ 4—is a "relevant factor" that further put Plaintiff on notice of contractual terms. *Whalen*, 2025 WL 1948591, at *4.

[6] To the extent that Plaintiff relies in opposition on *Nixon v. Vegas.com, LLC*, 2025 WL 3719885 (N.D. Cal. Dec. 23, 2025), and *Schleuter-Beckner v. SimpliSafe, Inc.*, 2025 WL 2162948 (N.D. Cal. July 30, 2025) where the notice was insufficiently conspicuous, those cases are clearly distinguishable. Most critically, the design elements present here render the notice provided to Plaintiff much clearer than that provided in *Nixon* and *Schleuter-Beckner*. None of the factors that the Court relied on in finding notice to be not reasonably conspicuous—light font color, smaller font size than the surrounding text, no emphasis of the hyperlink by bolding or underlining the text, crowded webpages, and the notice off to the side instead of above or below the relevant button—are present here. Morey Decl., ¶¶ 9-11.

3. The Arbitration Agreement was Validly Incorporated by Reference into the Sales Agreement.

"Under California law," incorporation by reference requires that (1) "the reference to another document was clear and unequivocal;" (2) "the reference was called to the attention of the other party, who consented to that term;" and (3) "the terms of the incorporated documents were known or easily available to the contracting parties." *Whalen*, 2025 WL 1948591, at *6 (quoting *Kleveland v. Chi. Title Ins. Co.*, 141 Cal. App. 4th 761, 765 (2006)). These criteria are satisfied here. The reference to the Arbitration Agreement in the Sales Agreement was clear and unequivocal: "THIS AGREEMENT IS SUBJECT TO A REQUIREMENT THAT DISPUTES MUST BE RESOLVED IN BINDING, INDIVIDUAL ARBITRATION, NOT IN COURT . . . SEE THE **ARBITRATION AGREEMENT PAGE** FOR FULL DETAILS AND OPT-OUT INSTRUCTIONS." Morey Decl., Ex. 2 (emphasis in original). The reference to the Arbitration Agreement was called to Plaintiff's attention in capitalized letters with the "Arbitration Agreement Page" hyperlink both bolded and underlined. *Id.* And, the Arbitration Agreement was easily available to Plaintiff by clicking on the hyperlink. *Id.* This is sufficient. *Whalen*, 2025 WL 1948591, at *6 (Terms of Use were incorporated into the Subscriber Agreement where the Agreements "state[d] that the consumer consents to the incorporated terms of use by subscribing" and "provide[d] hyperlinks to the incorporated documents in bright blue font").

4. The Waiver of Class-Wide Arbitration is Enforceable.

The Arbitration Agreement's requirement that Plaintiff arbitrate his claims on an individual basis is enforceable.[7] Morey Decl., Ex. 3. The class arbitration waiver is not procedurally unconscionable because Plaintiff had an opportunity to opt out. *Mohammed v. Uber Techs, Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016) ("the threshold inquiry in California's unconscionability analysis is whether the

[7] The Arbitration Agreement requires that "interpretation of this Agreement's class action waiver" must be decided by the Court—not the arbitrator. *See* Morey Decl., Ex. 3 ("'Disputes' that must be resolved by the arbitrator, and not a court, include disputes over enforceability of any provision of any agreement between you and Lenovo, except for interpretation of this Agreement's class action waiver, and disputes over whether a particular claim is arbitrable."); *id.* ("Disputes over the enforceability of this bar on class arbitrations or class or representative proceedings for non-arbitrable disputes are the only Disputes between us that must be presented to a court of competent jurisdiction, rather than an arbitrator.").

arbitration agreement is adhesive," and "an arbitration agreement is not adhesive if there is an opportunity to opt out") (citations omitted). And "[b]ecause the [waiver is] not procedurally unconscionable, and because both procedural and substantive unconscionability must be present in order for an agreement to be unenforceable," the waiver is enforceable. *Id.* Accordingly, Plaintiff must be compelled to arbitrate his claims on an individual basis. *Concepcion*, 563 U.S. at 348, 351 ("Arbitration is a matter of contract, and the FAA requires courts to honor parties' expectations."); *Johnmohammadi v. Bloomingdale's Inc.*, 755 F.3d 1072, 1074-77 (9th Cir. 2014) (affirming order compelling individual arbitration and enforcing class action waiver, where Plaintiff had the right to opt out of the arbitration agreement but did not).

### B. Plaintiff's Claims Are Subject to Arbitration.

#### 1. <u>The Parties Delegated Enforceability and Arbitrability to the Arbitrator.</u>

Parties may agree to arbitrate threshold "questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, W., Inc. v Jackson*, 561 U.S. 63, 68-69 (2010). Where, as here, the parties "clear[ly] and unmistakab[ly]" agree in "a valid agreement" to delegate these threshold issues to the arbitrator, "a court may not decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019).

Here, the Sales Agreement and Arbitration Agreement are valid, binding agreements, as explained above. And, the Arbitration Agreement contains a clear and unmistakable delegation provision, expressly stating that the "**'Disputes' that must be resolved by the arbitrator, and not a court, include disputes over enforceability of any provision of any agreement between you and Lenovo . . . and disputes over whether a particular claim is arbitrable.**" Morey Decl., Ex. 3 (emphasis in original). The Arbitration Agreement further provided that "Disputes over the enforceability of this bar on class arbitrations or class or representative proceedings for non-arbitrable disputes are the ***only*** Disputes between us that must be presented to a court of competent jurisdiction, rather than an arbitrator . . . ." *Id.* (emphasis added). Thus, the parties clearly and unmistakably delegated all disputes related to "enforceability" and "arbitrability"—with exception of disputes related to the class action waiver—to the arbitrator. *See Norris*, 2021 WL 1238303, at *5 (delegation clause expressly providing that all claims or

disputes involving the "interpretation" or "enforceability" of the arbitration agreement "must be submitted to arbitration" was a clear and unmistakable delegation).

Further, the Arbitration Agreement expressly provides that any dispute must be "administered by JAMS pursuant to its applicable rules." Morey Decl., Ex. 3. The JAMS Rules provide:

> Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

JAMS Comprehensive Arbitration Rules & Procedures, Rule 11(b), effective June 1, 2021, https://www.adr.org/media/qielmf0g/2025_commercialrules_web.pdf. Incorporation of such rules further evidences the parties' clear and unmistakable intent to delegate gateway issues of enforceability and arbitrability to the arbitrator. *Patrick*, 93 F.4th at 481 ("Incorporation of the JAMS arbitration rules by reference constitutes clear and unmistakable evidence that the parties agree to arbitrate arbitrability."); *Jameson*, 2025 WL 562889, at *3 (same).

2. <u>Plaintiff's Claims Fall Within the Scope of the Binding Arbitration Agreement</u>.

Even setting aside the delegation clause, Section 2 of the FAA requires that questions of arbitrability "be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone*, 460 U.S. at 24. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* at 24-25.

By its terms, the Arbitration Agreement applies to

> any dispute related to any aspect of the relationship between us, including but not limited to any Lenovo or third party product, software, or service you purchase from Lenovo, the associated purchase agreement, Lenovo's Privacy Policy, your purchase experience, and your use of any Lenovo website, application, or tool, asserted under any legal theory (collectively "Disputes"), including claims that accrued before you entered into this Agreement[.]

Morey Decl., Ex. 3. Here, Plaintiff bases his claims on his use of the Lenovo Website, Lenovo's Privacy Policy (which he repeatedly cites in his Complaint), his purchase of a Lenovo computer, his purchase experience on the Website, as well as his relationship with Lenovo more generally. Compl. ¶¶ 95-106.

Enforcement of the Arbitration Agreement "should not be denied unless it may be said with positive assurance that [it] is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs.*, 475 U.S. at 650; *see also Blau v. AT&T Mobility*, 2012 WL 10546, at *2 (N.D. Cal. Jan. 3, 2012) (Breyer, J.). Here, given the Arbitration Agreement's breadth, it cannot be said with positive assurance that the Arbitration Agreement is not susceptible of an interpretation covering Plaintiff's claims related to his use of the Website. The claims must be arbitrated.

**C. The Court Must Stay This Case Pending Arbitration.**

Because Plaintiff's claims must be resolved in individual arbitration, this Court should stay this action pursuant to Section 3 of the FAA. 9 U.S.C. § 3 (mandating that the court "shall" stay the proceedings pending arbitration); *Smith*, 601 U.S. at 478 ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding."). A stay of Plaintiff's claims is mandatory. *Id.* at 476.

## VI. CONCLUSION

For the foregoing reasons, Lenovo respectfully requests that the Court compel individual arbitration of Plaintiff's claims and stay this action pending arbitration.

Dated: May 4, 2026

By: **AKIN GUMP STRAUSS HAUER & FELD LLP**

*/s/ Laura D. Smolowe*
Laura D. Smolowe
Lauren E. Huennekens
1999 Avenue of the Stars, Suite 600
Los Angeles, CA 90067

Ashley Vinson Crawford
Fatima Bishtawi
**AKIN GUMP STRAUSS HAUER & FELD LLP**
100 Pine Street, Suite 3200
San Francisco, CA 94111

Elizabeth Scott (*pro hac vice*)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
2300 N. Field Street, Suite 1800
Dallas, TX 75201

Attorneys for Defendant
LENOVO (UNITED STATES) INC.