**ALMEIDA LAW GROUP LLC**
Victor J. Sandoval (SBN 344461)
3415 S. Sepulveda Blvd., Ste 1121
Los Angeles, California 90034
(562) 534-5907
victor@almeidalawgroup.com

David S. Almeida (*pro hac vice*)
Stephanie T. Reed (*pro hac vice*)
849 W. Webster Avenue
Chicago, Illinois 60614
(708) 437-6476
david@almeidalawgroup.com
stephanie@almeidalawgroup.com

*Counsel for Plaintiff & the Proposed Classes*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

SPENCER CHRISTY, *individually and on behalf of all others similarly situated*,

Plaintiff,

vs.

LENOVO (UNITED STATES) INC.,

Defendant.

Case No. 3:26-cv-01133-CRB

**PLAINTIFF'S OPPOSITION TO DEFENDANT LENOVO (UNITED STATES) INC.'S MOTIONS TO COMPEL ARBITRATION AND TO STRIKE CLASS ALLEGATIONS (ECFs 30, 31)**

**Date:** September 18, 2026
**Time:** 10:00 a.m.
**Location:** Courtroom 6 – 17th Floor
**Action Filed:** February 5, 2026

## TABLE OF CONTENTS

SUMMARY OF ARGUMENT .......... v
INTRODUCTION .......... 1
FACTUAL BACKGROUND .......... 1
LEGAL STANDARDS .......... 4
I. Motion to Compel Arbitration. .......... 4
II. Motion to Strike Class Allegations. .......... 4
ARGUMENT .......... 5
I. The Motion to Compel Should Be Denied. .......... 5
A. The Morey Declaration is Misleading. .......... 5
B. The Agreement is Browsewrap. .......... 6
C. However Labeled, the Agreement Was Inconspicuous. .......... 8
i. Context of the Transaction. .......... 9
ii. Visual Aspects of the Website. .......... 9
D. Plaintiff Did Not Unambiguously Manifest His Assent. .......... 12
E. No Stay is Warranted Because This Case is Not Arbitrable. .......... 14
II. The Motion To Strike Class Allegations Should Also Be Denied. .......... 14
CONCLUSION .......... 15

# TABLE OF AUTHORITY

PAGE(S)

**Cases**

*Armstrong v. Michaels Stores, Inc.*,
59 F.4th 1011 (9th Cir. 2023)....................................................................................... 4
*AT&T Technologies, Inc. Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986)....................................................................................... 4
*Azad v. Tokio Marine HCC-Med. Ins. Servs. LLC*,
2017 WL 3007040 (N.D. Cal. July 14, 2017)....................................................................................... 5
*B.D. v. Blizzard Ent., Inc.*,
76 Cal.App.5th 931 (2022)....................................................................................... 8
*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022)....................................................................................... *passim*
*Boddie v. Signature Flight Support Corp.*,
2019 WL 3554383 (N.D. Cal. Aug. 5, 2019)....................................................................................... vii, 14
*Bruton v. Gerber Prods. Co.*,
703 F.App'x. 468 (9th Cir. 2017) ....................................................................................... vii, 15
*Chabolla v. ClassPass, Inc.*,
2023 WL 4544598 (N.D. Cal. June 22, 2023) ....................................................................................... 11
*Cholakyan v. Mercedes-Benz USA, LLC*,
796 F. Supp. 2d 1220 (C.D. Cal. 2011)....................................................................................... vii, 14
*Christian v. LeafFilter North, LLC*,
2025 WL 2337125 (N.D. Cal. Aug. 13, 2025)....................................................................................... vi, 14
*Circuit City Stores, Inc. v. Adams*,
279 F.3d 889 (9th Cir. 2002)....................................................................................... 14
*Colaprico v. Sun Microsystems, Inc.*,
758 F. Supp. 1335 (N.D. Cal. 1991) ....................................................................................... 4
*Corbett v. Pharmacare U.S., Inc.*,
544 F. Supp. 3d 996 (S.D. Cal. 2021)....................................................................................... vii, 15
*Dilanyan v. Hugo Boss Fashions, Inc.*,
2025 WL 3549869 (C.D. Cal. Dec. 3, 2025) ....................................................................................... 13
*Fantasy, Inc. v. Fogerty*,
984 F.2d 1524 (9th Cir. 1993)....................................................................................... 5
*Farmer v. BarkBox, Inc.*,
2023 WL 8522984 (C.D. Cal. Oct. 6, 2023)....................................................................................... 11
*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995)....................................................................................... 4
*Forcellati v. Hyland's, Inc.*,
876 F. Supp. 2d 1155 (C.D. Cal. 2012)....................................................................................... vii, 15
*Godun v. JustAnswer LLC*,
135 F.4th 699 (9th Cir. 2025)....................................................................................... *passim*
*Graves v. Sw. & Pac. Specialty Fin., Inc.*,
2013 WL 5945851 (N.D. Cal. Nov. 4, 2013)....................................................................................... vi, 14
*Harris v. iHeartMedia, Inc.*,
2026 WL 194576 (N.D. Cal. Jan. 6, 2026) ....................................................................................... 13

*Heuvel v. Expedia Travel,*
2017 WL 5133270 (E.D. Cal. Nov. 6, 2017) ........ vi, 13
*Hines v. Overstock.com, Inc.*,
668 F. Supp. 2d 362 (E.D.N.Y. 2009) ........ 11
*Hoover v. Cleo AI, Inc.*,
2026 WL 1507408 (M.D. Pa. May 29, 2026) ........ 13
*In re SanDisk SSDs Litig.*,
736 F. Supp. 3d 786 (N.D. Cal. 2024) ........ vii, 15
*In re Vizio, Inc., Consumer Priv. Litig*.,
2017 WL 11420284 (C.D. Cal. July 25, 2017) ........ vii
*In re Wal-Mart Stores, Inc. Wage & Hour Litig.*,
505 F. Supp. 2d 609 (N.D. Cal. 2007) ........ vii, 5, 15
*Ireland-Gordy v. Tile, Inc.*,
2024 WL 5162413 (N.D. Cal. Dec. 19, 2024) ........ 4
*Kamath v. Coinbase, Inc.*,
2024 WL 950163 (N.D. Cal. Mar. 5, 2024) ........ 8
*Keebaugh v. Warner Bros. Ent. Inc*.,
100 F.4th 1005 (9th Cir. 2024) ........ vi, 8, 9, 10
*Kum Tat Ltd. v. Linden Ox Pasture, LLC*,
845 F.3d 979 (9th Cir. 2017) ........ 4
*Landon v. TSC Acquisition Corp.*,
2024 WL 5316981 (C.D. Cal. Apr. 10,2024) ........ 12
*Lee v. Plex, Inc*.,
773 F. Supp. 3d 755 (N.D. Cal. 2025) ........ vi, 9, 14
*Lopez v. Dave, Inc*.,
2023 WL 8594393 (9th Cir. Dec. 12, 2023) ........ 4, 10
*Lugo v. City of Redondo Beach*,
2022 WL 170078890 (C.D. Cal Sep. 1, 2022) ........ 15
*Luna v. Household Fin. Corp. III*,
236 F. Supp. 2d 1166 (W.D. Wash. 2002) ........ vi, 14
*Mlejnecky v. Olympus Imaging Am., Inc*.,
2011 WL 489743 (E.D. Cal. Feb. 7, 2011) ........ 14
*Morgan v. Sundance, Inc.*,
596 U.S. 411 (2022) ........ 4
*Nguyen v. Barnes & Noble Inc*.,
763 F.3d 1171 (9th Cir. 2014) ........ *passim*
*Nixon v. Vegas.com, LLC*,
2025 WL 3719885 (N.D. Cal. Dec. 23, 2025) ........ v, 9, 10
*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) ........ *passim*
*Plata v. Lands' End, Inc*.,
2024 WL 5339858 (C.D. Cal. Dec. 19, 2024) ........ 10
*Platte Anchor Bolt, Inc. v. IHI, Inc.*,
352 F. Supp. 2d 1048 (N.D. Cal. 2004) ........ 5
*Rushing v. Williams-Sonoma, Inc.*,
2025 WL 2391394 (N.D. Cal. Aug. 18, 2025) ........ v, 5
*Sanchez v. Maggy London Int'l Ltd*.,
2025 WL 3097931 (S.D. Cal. Nov. 6, 2025) ........ 13

*Schlueter-Beckner v. SimpliSafe, Inc.*,
2025 WL 2162948 (N.D. Cal. July 30, 2025) ... v, 9
*Sellers v. JustAnswer LLC*,
73 Cal. App. 5th 444 (2021) ... 8, 9, 12
*Seneca v. Homeaglow, Inc.*,
2024 WL 750029 (C.D. Cal. Feb. 7, 2024) ... 11
*Serrano v. Open Rd. Delivery Holdings, Inc.*,
666 F. Supp. 3d 1089 (C.D. Cal. 2023) ... 10
*Shaterian v. Wells Fargo Bank*, N.A.,
829 F. Supp. 2d 873 (N.D. Cal. 2011) ... 4
*Sidney-Vinstein v. A.H. Robins Co.*,
697 F.2d 880 (9th Cir. 1983) ... vii, 14
*Specht v. Netscape Commc'ns Corp.*,
306 F.3d 17 (2d Cir. 2002) ... 11
*Stover v. Experian Holdings, Inc.*,
978 F.3d 1082 (9th Cir. 2020) ... v, 4
*T.K. v. Adobe Sys. Inc.*,
2018 WL 1812200 (N.D. Cal. Apr. 17, 2018) ... vii, 15
*Thorpe v. Abbott Laboratories, Inc.*,
534 F. Supp. 2d 1120 (N.D. Cal. 2008) ... 5
*Tietsworth v. Sears*,
720 F. Supp. 2d 1123 (N.D. Cal. 2010) ... 5
*Wood V. MyPillow, Inc.,*
2026 WL 1763858 (N.D. Cal. June 18, 2026) ... 13

**Rules**

Fed. R. Civ. P. 12(f) ... 4, 14

**Regulations**

28 C.F.R. Part 202 ... 2

## SUMMARY OF ARGUMENT

Lenovo (United States) Inc. ("Lenovo" or "Defendant") cannot meet its burden to show that Mr. Spencer Christy ("Plaintiff") entered a valid agreement to arbitrate. *Stover v. Experian Holdings, Inc.*, 978 F.3d 1082, 1086 (9th Cir. 2020).

As an initial matter, the Morey Declaration in support of Lenovo's motion is misleading. Its screenshots do not reflect how the checkout page actually appeared to a user, and Mr. Morey does not attest that the screenshots represent how the page appeared to Mr. Christy—nor could he, since Mr. Christy, like all users, was required to scroll the page past the pay button to be presented with the hyperlink to the Sales Agreement that Lenovo argues he agreed to, and he never did so. *See* Declaration of Spencer Christy ("Christy Decl.) ¶¶ 4-8. Because Lenovo has presented no evidence of how the page actually appeared to any consumer, it cannot meet its burden. *Rushing v. Williams-Sonoma, Inc.*, 2025 WL 2391394, at *4 (N.D. Cal. Aug. 18, 2025).

Lenovo also mischaracterizes the Sales Agreement as a clickwrap agreement. Mr. Christy was never asked to check a box or click a button expressly manifesting assent, such as "I Agree"; the button on the page, "Place Order," completes a purchase, not an agreement to terms. *See Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022). This is a browsewrap agreement, and Lenovo cannot show that Plaintiff had actual notice of the Sales Agreement or that it was reasonably conspicuous. *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176-77 (9th Cir. 2014).

Even setting aside its label, the agreement was inconspicuous. *Godun v. JustAnswer LLC*, 135 F.4th 699, 709 (9th Cir. 2025). The context of the transaction—a one-time hardware purchase—did not put Mr. Christy on notice to expect a continuing relationship governed by additional terms. *Nixon v. Vegas.com, LLC*, 2025 WL 3719885, at *5 (N.D. Cal. Dec. 23, 2025) (Breyer, J.); *Schlueter-Beckner v. SimpliSafe, Inc.*, 2025 WL 2162948, at *4 (N.D. Cal. July 30, 2025) (Breyer, J.). And the visual design of the checkout page rendered the hyperlink to the Sales Agreement overwhelmingly inconspicuous, as it appeared in tiny, non-contrasting gray font, distinguished only by a thin underline, buried beneath a crowded array of far more visually prominent elements—payment-method boxes, a full-width black "Buy with G Pay" button, a card-entry form, and a reCAPTCHA checkbox—at the very bottom of the page, in a location users,

including Mr. Christy, **could not see** unless they scrolled to it, which they had no reason to do. *Berman*, 30 F.4th at 857; *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024); *Nguyen*, 763 F.3d at 1177-78.

Finally, even if the notice were conspicuous, Lenovo cannot show that Mr. Christy unambiguously manifested assent, because the checkout page lacked any textual advisement explaining that clicking "Place Order" would constitute assent to the Sales Agreement. *Godun*, 135 F.4th at 710-11; *Berman*, 30 F.4th at 857-58. Lenovo's sole authority, *Van Den Heuvel v. Expedia Travel,* 2017 WL 5133270 (E.D. Cal. Nov. 6, 2017), predates *Berman*, *Godun* and other Ninth Circuit authority stressing the textual advisement informing the consumer what act constitutes assent—and it also involved a checkout page that included the very textual advisement missing here, it just want not discussed in the opinion. *See* Request for Judicial Notice in Support of Opposition to Defendant's Motions to Compel Arbitration and Strike ("RJN"), Ex. A, *Van Den Heuvel v. Expedia Travel*, Case No. 2:16-cv-00567-JAM-AC (E.D. Cal. Sept. 26, 2017), ECFs 63-1 (declaration in support of motion to compel arbitration authenticating print-out of payment page); Ex. B, *Van Den Heuvel v. Expedia Travel*, Case No. 2:16-cv-00567-JAM-AC (E.D. Cal. Sept. 26, 2017), ECF 63-2 (print-out of payment page displaying "Complete Booking" button beneath text advising user that "[b]y selecting to complete this booking…[you] accept…the Terms of Use").

Because no valid agreement to arbitrate was formed, the Court need not, and should not, stay this action pending arbitration. *Luna v. Household Fin. Corp. III*, 236 F. Supp. 2d 1166, 1174 (W.D. Wash. 2002).

Similarly, Lenovo's motion to strike plaintiff's class allegations, which is premised on the class waiver found in the same arbitration agreement, should be denied because there is no assent. *Lee v. Plex, Inc.*, 773 F. Supp. 3d 755, 774 (N.D. Cal. 2025).

Additionally, it is premature to decide a motion to strike class allegations at this stage of the litigation. *See, e.g., Christian v. LeafFilter North, LLC*, 2025 WL 2337125, at *2 (N.D. Cal. Aug. 13, 2025) (Breyer, J.); *Graves v. Sw. & Pac. Specialty Fin., Inc.*, 2013 WL 5945851, at *3-*4 (N.D. Cal. Nov. 4, 2013) (finding defendant's motion to strike class-action allegations regarding arbitrability of absent class-member claims was "premature," given that defendant "has not filed

an answer to the complaint, discovery has not yet commenced, and no motion for class certification has been filed"); *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1246 (C.D. Cal. 2011) (finding motion to strike class allegations premature where defendant had not filed an answer and discovery had not begun); *Boddie v. Signature Flight Support Corp.*, 2019 WL 3554383, at *3 (N.D. Cal. Aug. 5, 2019) ("While class allegations may be stricken from the pleadings, numerous courts within this district have determined that motions to strike class allegations are disfavored because a motion for class certification is a more appropriate vehicle for arguments about class propriety.") (internal citations and quotation marks omitted); *see also T.K. v. Adobe Sys. Inc.*, 2018 WL 1812200, at *13 (N.D. Cal. Apr. 17, 2018) ("[T]he Court finds it more appropriate to address these issues at the class certification stage once both sides have had the opportunity to further develop their arguments and engage in discovery."); *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007) ("In the absence of any discovery or specific arguments related to class certification, the [c]ourt is not prepared to rule on the propriety of the class allegations and explicitly reserves such a ruling."); *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983); *In re Vizio, Inc., Consumer Priv. Litig*., 2017 WL 11420284, at *7 (C.D. Cal. July 25, 2017).

It is also premature to strike Plaintiff's nationwide unjust enrichment allegations because the choice-of-law inquiry that such a challenge requires is fact-intensive and belongs at class certification, after discovery—and because Plaintiff may narrow the class or seek state-based subclasses to eliminate any conflict. *In re SanDisk SSDs Litig.*, 736 F. Supp. 3d 786, 792, 796 (N.D. Cal. 2024) (declining to apply *Mazza* because the "fact-heavy inquiry should occur during the class certification stage" and preserving the unjust enrichment claim) (internal citations omitted); *Bruton v. Gerber Prods. Co.*, 703 F.App'x. 468, 470 (9th Cir. 2017) (unjust enrichment may be pursued as an independent, standalone cause of action); *Forcellati v. Hyland's, Inc*., 876 F. Supp. 2d 1155, 1159-60 (C.D. Cal. 2012) (denying motion to strike nationwide class allegations as premature, discovery may allow plaintiff to narrow or define the class, or seek subclasses by state or group of states, to render any differences immaterial); *Corbett v. Pharmacare U.S., Inc.*, 544 F. Supp. 3d 996, 1012 (S.D. Cal. 2021) (similar). For these reasons, Defendant's motions should be denied.

## INTRODUCTION

Lenovo's Motion to Compel Arbitration cannot establish that plaintiff, Spencer Christy, unambiguously manifested his assent to arbitrate his claims because it lacks a textual notice "*explicitly* advis[ing him] that the act of clicking will constitute assent to the terms and conditions of an agreement." *Godun*, 135 F.4th at 710 (emphasis in original) (citations omitted). As the Ninth Circuit has repeatedly made clear, "a webpage must *explain* that certain actions will be understood by the offeror to signal assent to contractual terms. And it must identify what, exactly, those actions are." *Id.* at 711 (emphasis in original) (citations omitted). Lenovo's website does not do so and, thus, it cannot establish that Mr. Christy unambiguously manifested his assent to arbitrate his claims.

Lenovo has not put forward a **single** case in which a Court has found that a party manifested their assent without the requisite textual advisement—its only case in support, although not directly addressing the issue, included the requisite notice. *See* RJN, Ex. B.

Lenovo's Motion to Compel Arbitration should be denied, not only because it lacks the requisite textual advisement, but also because the hyperlink to the agreement containing the arbitration provision is entirely inconspicuous. The hyperlink appears at the very bottom of the final page of a multi-step check-out flow in a position most users, including Mr. Christy, will never see. Furthermore, the context of the transaction does not indicate a continuing relationship. A stay should be denied because no agreement to arbitrate was formed.

Lenovo's Motion to Strike Plaintiff's class allegations based on the class waiver found in the same agreement should be denied for the same reason, and for the additional reasons that there are factual disputes and that resolution of such a motion is premature at this stage of the litigation.

## FACTUAL BACKGROUND

This case concerns Lenovo's systematic and knowing provision of access to Americans' sensitive behavioral data to foreign adversaries. ¶¶10-11.[1] When consumers visited Lenovo's website to browse and purchase computer products, Lenovo's network of tracking technologies

[1] Citations to "¶#" and "¶¶#" are to the Complaint, ECF No. 1; to "MTCA" to Lenovo's Motion to Compel Arbitration, ECF No. 30; to "MTS" to its Motion to Strike, ECF 31.

silently intercepted their browsing activity—capturing persistent identifiers, full-string URLs, IP addresses, advertising IDs, and cookie data—and routed that information to its parent, Lenovo Group Limited ("Lenovo Group"). ¶¶ 13-14. Lenovo Group is headquartered in the People's Republic of China ("PRC") and is subject to PRC intelligence laws requiring the Lenovo Group to grant authorities unrestricted access to user data. ¶¶ 27-30.

Mr. Christy visited Lenovo's website in November and December of 2025 to purchase a Legion Tower 7i Gen 10 (Intel) with RTX™ 5080. ¶¶ 95-97. During his visits, Lenovo helped third parties intercept and record his communications with the website—including his cookie IDs, device IDs, IP addresses, browser metadata, and the full URLs of the pages he viewed, revealing the products he searched for and ultimately purchased—without his knowledge or consent. ¶¶ 98-100, 105. Lenovo then used that intercepted information for its own purposes and made it accessible to Lenovo Group, as its own privacy policy concedes. ¶¶ 78-79, 101, 150.

Lenovo's conduct violates the U.S. Department of Justice's Bulk Sensitive Data Transfer Rule ("BSDR"), 28 C.F.R. Part 202—a national security regulation that bars U.S. companies from utilizing tracking technologies to transfer Americans' bulk sensitive personal data—including but not limited to IP addresses, advertising IDs, and cookie data—to entities tied to countries of concern, including the PRC. ¶¶ 2, 36-93. It also violates the Electronic Communications Privacy Act ("ECPA"), the California Invasion of Privacy Act, California's Unfair Competition Law, and other federal and state laws. ¶¶ 107-261. Mr. Chirsty brings class claims for these violations.

Seeking to avoid judicial scrutiny, Lenovo moves to compel arbitration. *See* MTCA. Lenovo's motion relies on the declaration of Kevin Morey. ECF No. 30-1 ("Morey Decl."). The Morey declaration provides "screenshot[s] of the relevant webpage[s]" for the check-out flow with which Mr. Christy is purported to have assented to arbitrate. Morey Decl. ¶¶ 5-10.

According to those screenshots, the final page of the checkout flow—the "Review & Pay" page—is a busy, multi-element screen. It opens with a "Verify Billing Information" box containing the user's billing address in bordered text. Below that sits a "Select Payment Method" section presenting four separately bordered payment-option boxes—Card Payment, Multiple Credit Cards, Katapult "Lease-to-Own," and PayPal—each with its own icon. Beneath those boxes is a

prominent, full-width black "Buy with G Pay" button. Below that is a complete card-entry form, including fields for card number, cardholder name, expiry date, and security code, accompanied by icons for Visa, Mastercard, American Express, and Discover. Below the card-entry fields is a reCAPTCHA "I'm not a robot" checkbox. Only beneath all of that—and far beneath the gray "Place Order" button itself—does the following sentence appear, in small, light-gray, non-bolded, non-capitalized font: "I have read and agree to the Privacy Policy, Lenovo Sales Agreement & verify that I am over the age of 18." *Id.* ¶¶ 9-10; ECF 30-2. At the very bottom of the page beneath the fold, the hyperlinked terms are rendered in that same small gray font as the rest of the sentence, distinguished only by a thin underline, with no contrasting color, bolding, or capitalization to set them apart from the surrounding text or the far more visually prominent elements above them—the colored payment-method icons, the solid black G Pay button, and the credit-card brand logos.

The screenshots do not depict how the page actually renders in a browser. Presented in static, cropped form, they compress onto a single image content that, in reality, requires scrolling before the Sales Agreement hyperlink comes into view. A user landing on the "Review & Pay" page sees only the billing-information box and payment-method options in the initial viewport; the G Pay button, card-entry form, reCAPTCHA, and "Place Order" button all sit further down the page. Christy Decl. ¶ 5. The hyperlink is not visible unless the user scrolls to the bottom—well past what placing an order requires.




*Id.* ¶¶ 5-6. Mr. Christy scrolled only as far as the card-entry fields, clicked "Place Order," and never saw the hyperlink beneath it. *Id.* ¶¶ 4-7.

Lenovo's motion to strike relies on the same Morey declaration, screenshots, and assent theory as its motion to compel. MTS at 1:7-9. Accordingly, both fail because Mr. Christy did not agree to the Sales Agreement—he was not presented the Sales Agreement hyperlink and did not manifest assent to arbitration or the class waiver.

## LEGAL STANDARDS

### I. MOTION TO COMPEL ARBITRATION.

"[T]here is no 'strong federal policy favoring enforcement of arbitration agreements.' The federal policy is to treat arbitration agreements like other contracts." *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1014-15 (9th Cir. 2023) (citing *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022)). A party "cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Technologies, Inc. Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (internal quotations omitted). Courts "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (citations omitted).

This Court, not the arbitrator, must first determine the validity of the arbitration agreement. *See, e.g.*, *Kum Tat Ltd. v. Linden Ox Pasture, LLC*, 845 F.3d 979, 983 (9th Cir. 2017). As the party moving to compel, Lenovo bears the burden to prove that a valid, enforceable agreement to arbitrate was formed. *See Stover*, 978 F.3d at 1086. The court affords the non-movant "the benefit of all reasonable doubts and inferences." *Lopez v. Dave, Inc.*, 2023 WL 8594393, at *1 (9th Cir. Dec. 12, 2023) (citations omitted). "[O]nly when no genuine disputes of material fact surround the arbitration agreement's existence and applicability may the court compel arbitration." *Ireland-Gordy v. Tile, Inc.*, 2024 WL 5162413, at *4 (N.D. Cal. Dec. 19, 2024) (citations omitted).

### II. MOTION TO STRIKE CLASS ALLEGATIONS.

Before responding to a pleading, a party may move to strike from a pleading any "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored. *See Shaterian v. Wells Fargo Bank*, N.A., 829 F. Supp. 2d 873, 879 (N.D. Cal. 2011). A motion to strike should only be granted if the matter sought to be stricken clearly has no possible bearing on the subject matter of the litigation. *See Colaprico v. Sun Microsystems, Inc.*,

758 F. Supp. 1335, 1339 (N.D. Cal. 1991); *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) ("'Immaterial matter' is that which has no essential or important relationship to the claim for relief or the defenses being pleaded."). A court may "strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained." *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1146 (N.D. Cal. 2010). However, motions to strike class allegations are disfavored because a motion for class certification is a more appropriate vehicle for arguments pertaining to the class allegations. *See Thorpe v. Abbott Laboratories, Inc.*, 534 F. Supp. 2d 1120, 1125 (N.D. Cal. 2008); *Azad v. Tokio Marine HCC-Med. Ins. Servs. LLC*, 2017 WL 3007040, at *8 (N.D. Cal. July 14, 2017); *see also In re Wal-Mart Stores*, 505 F. Supp. 2d at 614-15 (N.D. Cal. 2007) ("Generally, courts review class allegations through a motion for class certification."). "If there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion to strike." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004) (citation omitted). Just as with a motion to dismiss, the court should view the pleading sought to be struck in the light most favorable to the nonmoving party. *Id.*

## ARGUMENT

### I. THE MOTION TO COMPEL SHOULD BE DENIED.

#### A. The Morey Declaration is Misleading.

As an initial matter, the Morey Declaration in support of Lenovo's motion to compel are misleading. The screenshots it presents capture the entire page, top to bottom, in a single screenshot. They make it appear as if the pages are presented to users accordingly, but no phone or computer's aspect ratio would show the entire webpage in that manner. In actuality, the webpages are so long that even users who zoom out are required to scroll the page to see beneath the "Place Order" button. Christy Decl. ¶ 5-6. Indeed, Mr. Morey does not even attest that his declaration represents how the page appeared to Mr. Christy. Morey Decl. ¶¶ 7-9 (stating only that it is "a screenshot of the relevant webpage"). Put simply—Lenovo provides *no evidence* of how the relevant pages actually appeared to any consumer. *Rushing*, 2025 WL 2391394, at *4 (no agreement to arbitrate where movant "presents *no evidence* of how the process…appeared to any consumer during any timeframe") (emphasis in original).




Mr. Christy completed his purchase on a laptop and scrolled only far enough to reach the "Place Order" button. *See* Christy Decl. ¶¶ 4-8 (image cropped to emphasize bottom of page with hyperlink invisible). He was not required to, and did not, scroll further down the page to where the Sales Agreement was hyperlinked. *Id*. ¶¶ 6-7. Accordingly, Lenovo has not met its burden of proof.

Even if it had presented the screen in a manner that could meet their burden, it would be insufficient for reasons discussed below.

**B. The Agreement is Browsewrap.**

Lenovo casts the Sales Agreement as a "clickwrap agreement," (MTCA at 10) but the design of its checkout page tells a different story. A true clickwrap agreement requires the user to take an affirmative, unambiguous action tied directly to the agreement itself—typically checking a box positioned next to the terms or clicking a button that expressly manifests assent—such as "I agree." *Berman*, 30 F.4th at 856 (clickwrap is formed when a user "must check a box explicitly stating 'I agree' " before proceeding). Nothing of the sort happened here.

Mr. Christy was never asked to check a box next to the Sales Agreement hyperlink. He was never asked to click a button labeled "I Agree" or anything similar. The only button on the page was "Place Order"—a button whose function, on its face, is to complete a purchase, not to signify agreement to contractual terms. The sentence hyperlinking the Sales Agreement sat far beneath that button, at the bottom of the page where most users are unlikely to see it (and where Mr. Christy did not see it), disconnected from any mechanism requiring the user to interact with it. Christy Decl. ¶ 7. Clicking "Place Order" manifests an intent to buy a computer; it does not, without more, manifest

an intent to agree to an arbitration clause the user was never required to open, read, or acknowledge through any affirmative click of their own.

This is the hallmark of a browsewrap agreement, not a clickwrap agreement. "Unlike a clickwrap agreement, a browsewrap agreement does not require the user to manifest assent to the terms and conditions expressly[.]" *Nguyen*, 763 F.3d at 1176 (quotation omitted). "The defining feature of browsewrap agreements is that the user can continue to use the website or its services without visiting the page hosting the browsewrap agreement or even knowing that such a webpage exists." *Id.* (citation omitted). When considering "'browsewrap' agreements, in which a website offers terms that are disclosed only through a hyperlink" courts are "more reluctant to enforce browsewrap agreements because consumers are frequently left unaware that contractual terms were even offered, much less that continued use of the website will be deemed to manifest acceptance of those terms." *Berman*, 30 F.4th at 856 (citing *Nguyen* 763 F.3d at 1176, 1178).

As the *Berman* court explained, "[t]o avoid the unfairness of enforcing contractual terms that consumers never intended to accept, courts confronted with online agreements such as those at issue here have devised rules to determine whether meaningful assent has been given. Unless the website operator can show that a consumer has actual knowledge of the agreement, an enforceable contract will be found based on an inquiry notice theory only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." 30 F.4th at 856 (citations omitted).

"Visual conspicuousness" includes the "factors relevant to [the] visual analysis of webpages and hyperlinks, such as the location of the advisal on the webpage or the font size, color, and contrast (against the page's background)." *Godun*, 135 F.4th at 709. In addition, courts consider the presence of images and other visual elements on the website page in question that might "draw the user's attention away from the barely readable critical text." *Berman*, 30 F.4th at 857. "Under California law, this inquiry is 'fact-intensive' and is informed by the 'totality of the circumstances.'" *Godun*, 135 F.4th at 709 (quoting *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 514 (9th Cir. 2023)).

Here, Lenovo does not argue that Plaintiff had actual notice of the Sales Agreement. MTCA at 10:10-18. And, indeed, he did not. Chirsty Decl. ¶ 7-8. Accordingly, it must instead show that its notice was so conspicuous that a reasonably prudent user would have seen and understood it before completing the purchase; that there was an explicit, conspicuous textual notice that a particular action constitutes assent; and that Mr. Christy took that action. Given the manipulated aspect ratio of the Morey Declaration's screenshots, the scrolling actually required to see the Sales Agreement hyperlink, and the fact that the "Place Order" button was placed such that it could be—and was—clicked without ever seeing, scrolling to, or engaging with the Sales Agreement below it, and that there was no textual notice advising the user that a particular act constitutes assent, Lenovo cannot make that showing.

**C. However Labeled, the Agreement Was Inconspicuous.**

Although Courts generally require a greater showing of conspicuousness to enforce a browsewrap agreement (*Berman*, 30 F.4th at 856) "[t]he precise label does not matter; so long as the agreement gave reasonably conspicuous notice and Plaintiff manifested assent[.]" *Kamath v. Coinbase, Inc.*, 2024 WL 950163, at *4 n.3 (N.D. Cal. Mar. 5, 2024) (Breyer, J.) (noting an agreement is likely a click wrap agreement because, unlike here, the button was labeled "accept terms"). "To be conspicuous, [the] notice 'must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it.'" *Keebaugh*, 100 F.4th at 1014 (quoting *Berman*, 30 F.4th at 856). The "context of the transaction," as well as the "traditional inquiry related to the visuals involved with the notice, such as font size, text placement, and overall screen design," inform whether a website provides reasonably conspicuous notice of the terms of an agreement. *Id*. at 1019 (citing *Oberstein*, 60 F.4th at 517; *B.D. v. Blizzard Ent., Inc.*, 76 Cal.App.5th 931 (2022); *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444 (2021)). The nature of the service or goods offered and the visual aspects of every page of a multi-page transaction should be considered together. *See Oberstein*, 60 F.4th at 515 ("[T]he inquiry has always been context-and fact-specific." (citation omitted)); *Sellers*, 289 Cal. Rptr. 3d at 26-28.

//

//

**i. Context of the Transaction.**

The nature of an agreement may anticipate "some sort of continuing relationship ... that would require some terms and conditions[.]" *Sellers*, 289 Cal. Rptr. 3d at 26 (emphasis omitted); *see Keebaugh*, 100 F.4th at 1019-20. A user should expect that certain relationships are bound by terms, even if not explicitly told. *See Keebaugh*, 100 F.4th at 1020 (users who download and play a mobile game that includes in-app purchases should expect a continuing relationship with the developer governed by terms of use); *Oberstein*, 60 F.4th at 517 (users who make an account with a ticket purchasing website through a "full registration process" should expect "'some sort of continuing relationship' that would have put users on notice for a link to the terms of that continuing relationship."). Conversely, when a user simply purchases goods or avails themselves of a one-time discount offer, there is less reason for them to expect a continued relationship beyond the purchase. *Sellers*, 289 Cal. Rptr. 3d at 25.

Here, the "context of the transaction" did not put Mr. Christy "on notice for a link to the terms of that continuing relationship." *Oberstein*, 60 F.4th at 517. Because Mr. Christy "just made a one-time" purchase, "his relationship with [Lenovo] did not go beyond his purchase." *Nixon*, 2025 WL 3719885, at *5 (Breyer, J.). Any "past visits to the website before making his transaction does not change the fact that his relationship with [Lenovo] 'did not contemplate any future purchases that would be bound by terms.'" *Id.* (emphases in original) (quoting *Lee v. Plex, Inc.*, 773 F. Supp. 3d at 765-66. Accordingly, the context "'did not put him on notice to look for additional terms.'" *Nixon*, 2025 WL 3719885, at *5 (Breyer, J.); *see also Schlueter-Beckner*, 2025 WL 2162948, at *4 (Breyer, J.) (finding same where, as here, "the transaction was for a one-time sale of hardware" and Plaintiff did not intend to create a long-term relationship).

**ii. Visual Aspects of the Website.**

"Website users are entitled to assume that important provisions—such as those that disclose the existence of proposed contractual terms—will be prominently displayed, not buried in fine print." *Berman*, 30 F.4th at 857. "While terms may be disclosed through hyperlinks, the presence of a hyperlink 'must be readily apparent[.]'" *Keebaugh*, 100 F.4th at 1014 (quoting *Berman*, 30 F.4th at 857) (alteration in original). Courts look to "'the conspicuousness and placement of the

Terms of Use hyperlink, other notices given to users of the terms of use, and the website's general design' in determining 'whether a reasonably prudent user would have inquiry notice.'" *Oberstein*, 60 F.4th at 515 (quoting *Nguyen*, 763 F.3d at 1177); *see Keebaugh*, 100 F.4th at 1020–21 (applying *Berman* and *Oberstein* to a sign-in wrap agreement). "For a hyperlink to be reasonably conspicuous, it must be denoted by design elements tailored to notify the reasonably prudent internet user of its presence." *Nixon*, 2025 WL 3719885, at *6 (Breyer, J.). The use of a different colored font can be reasonably conspicuous. *Id.* But, '[s]imply underscoring words or phrases ... will often be insufficient to alert a reasonably prudent user that a clickable link exists.'" *Keebaugh*, 100 F.4th at 1014 (quoting *Berman*, 30 F.4th at 857) (alteration in original). Accordingly, courts regularly deny motions to compel arbitration on the grounds that hyperlinked terms were not reasonably conspicuous enough to bind the user to arbitration where they were underlined but were not in capital letters and appeared in the same font color as the rest of the sentence. *See e.g.*, *Lopez*, 2023 WL 8594393 at *1 (denying motion where terms were underlined because they were in the same tiny grey font); *Plata v. Lands' End, Inc*., 2024 WL 5339858, at *5 (C.D. Cal. Dec. 19, 2024) (same where the "hyperlink is the same color, size, and style of font as the rest of the text in the notice and a … color … that does not stand out amongst the rest of the text on the screen"); *Serrano v. Open Rd. Delivery Holdings, Inc*., 666 F. Supp. 3d 1089, 1096 (C.D. Cal. 2023) (same where "nothing in the webpage draws the viewer's attention to" the Terms that lacked contrasting font color or capital letters).

Here, the hyperlink to Lenovo's Sales Agreement is printed in a tiny font that is substantially smaller than the text on the surrounding page, is in non-contrasting color and deemphasized in comparison to the overall screen design. The checkout screen is crowded with competing visual elements that draw the user's attention away from the small line of text at the bottom of the screen (which most users never scroll to, at all), including a "Select Payment Method" section presenting four bordered payment-option boxes (Card Payment, Multiple Credit Cards, Katapult "Lease-to-Own," and PayPal), a prominent black "Buy with G Pay" button spanning the width of the page, a full card-entry form (card number, cardholder name, expiry date, security code), and a reCAPTCHA "I'm not a robot" checkbox—all of which are rendered in larger, bolder, or more

visually prominent fonts, colors, and design treatments than the agreement line itself and which draw the users eyes away from the hyperlink.

The hyperlinks here are also problematic because they are in the same color font as the surrounding text and none are in all caps. *See Berman*, 30 F.4th at 857 (cautioning that hyperlinks should "include the use of a contrasting font color (typically blue) and the use of all capital letters"). The hyperlinked terms are not only rendered in the same small gray font as the surrounding non-hyperlinked text, but they are also sized noticeably smaller than every other textual element on the page, including the section headers, the payment-method labels, and the form-field labels above it. Neither "Privacy Policy" nor "Lenovo Sales Agreement" is bolded, capitalized, or set off in a contrasting color from the surrounding sentence; the only visual distinction is a thin underline.

But, the fact that the hyperlink concealed at the footer of the check-out screen is denoted in a thin barely-noticeable underline is insufficient to salvage the overwhelming inconspicuousness created by its tiny font size and placement that otherwise causes the terms to blend into the screen. In fact, many courts have refused to bind consumers to terms even where they were hyperlinked in a contrasting color. *See, e.g.*, *Farmer v. BarkBox, Inc*., 2023 WL 8522984, at *2 (C.D. Cal. Oct. 6, 2023); *Chabolla v. ClassPass, Inc*., 2023 WL 4544598, at *4 n.3. (N.D. Cal. June 22, 2023), *aff'd* 129 F.4th 1147, 1154 (9th Cir. 2025) (finding notice was insufficient due to *inter alia* tiny font); *Seneca v. Homeaglow, Inc*., 2024 WL 750029, at *4 (C.D. Cal. Feb. 7, 2024) (holding notice was insufficient because the text was "no bigger" than the remaining text and "does not call any particular attention to these important conditions"). A similar finding is appropriate here.

Finally, the placement of the Sales Agreement hyperlink makes it overwhelmingly inconspicuous. "Where the link to a website's terms of use is buried at the bottom of the page or tucked away in obscure corners of the website where users are unlikely to see it, courts have refused to enforce the browsewrap agreement." *Nguyen*, 763 F.3d at 1177 (citing, *inter alia*, *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 23 (2d Cir. 2002) (refusing to enforce terms of use that "would have become visible to plaintiffs only if they had scrolled down to the next screen"); *Hines v. Overstock.com, Inc.*, 668 F. Supp. 2d 362, 367 (E.D.N.Y. 2009), *aff'd*, 380 F. App'x 22 (2d Cir. 2010) (plaintiff "could not even see the link to [the terms and conditions] without scrolling down

to the bottom of the screen—an action that was not required to effectuate her purchase").) That is exactly the case here. The hyperlink to the Sales Agreement is buried at the bottom on the Website such that most users are never even presented with the hyperlink—including Mr. Christy. The hyperlink to the Sales Agreement was overwhelmingly inconspicuous and is, accordingly, unenforceable. *See Landon v. TSC Acquisition Corp.*, 2024 WL 5316981 (C.D. Cal. Apr. 10,2024) ("Regardless of the number of times [p]laintiff visited the home page, they could not be on inquiry notice of an inconspicuous hyperlink tucked away at the bottom of the page."). *See also Oberstein*, 60 F.4th at 515-16, 518; *Berman*, 30 F.4th at 856; *Nguyen*, 763 F.3d at 1177.

Even if that were not the case, there would still be no assent because the Website did not provide Mr. Christy a means of unambiguously manifesting his assent to the Sales Agreement.

**D. Plaintiff Did Not Unambiguously Manifest His Assent.**

The second step of the internet contract formation analysis requires consideration of whether "any action taken by the internet user . . . unambiguously manifest[ed] his or her assent" to proposed contractual terms. *Godun*, 135 F.4th at 710 (citations omitted). That standard is exacting. Unambiguous assent can only occur "where an internet user is '*explicitly* advised that the act of clicking will constitute assent to the terms and conditions of an agreement.' Even strongly implicit notice isn't enough—a webpage must *explain* that certain actions will be understood by the offeror to signal assent to contractual terms. And it must identify what, exactly, those actions are." *Id.* at 710-11 (citations omitted).

That did not occur here. Here, as in *Godun*, "[t]he advisal on these pages failed to explicitly advise users of what action would constitute assent to any terms they were provided with." *Id.* at 712. "The advisal lacked an explanatory phrase indicating that By clicking" Place Order Mr. Christy agreed to the Terms. *Id.* (cleaned up). Rather, far beneath the "Place Order" button—in a location that Plaintiff could not see and did not pass over before clicking the Place Order button—text that was de-coupled from the button stated simply "I have read and agree to…the Lenovo Sales Agreement." Morey Decl. ¶ 9. Under binding Ninth Circuit precedent, "that is not enough to constitute 'an unambiguous manifestation of assent'" to the Sales Agreement. *Godun*, 135 F.4th at 713 (citing *Sellers*, 289 Cal. Rptr. 3d at 19 and *Berman*, 30 F.4th at 857). Because the interface

fails to communicate what action would signal agreement, no contract was formed. *Godun*, 135 F.4th at 713 ("an advisal that simply states that 'I understand and agree to the Terms and Conditions' but fails to 'indicate to the user what action would constitute assent' is not enough to invite an unambiguous manifestation of assent."); *accord Wood V. MyPillow, Inc.,* 2026 WL 1763858, at *5 (N.D. Cal. June 18, 2026) ("Defendant's checkout screen 'lack[s] an explanatory phrase' telling users that by clicking the checkbox, they are assenting to the website's terms"); *Harris v. iHeartMedia, Inc.*, 2026 WL 194576, at *4 (N.D. Cal. Jan. 6, 2026) (similar); *Dilanyan v. Hugo Boss Fashions, Inc.*, 2025 WL 3549869, at *4 (C.D. Cal. Dec. 3, 2025) (similar); *Hoover v. Cleo AI, Inc.*, 2026 WL 1507408, at *7 (M.D. Pa. May 29, 2026) (similar); *Sanchez v. Maggy London Int'l Ltd.*, 2025 WL 3097931, at *5 (S.D. Cal. Nov. 6, 2025) (denying motion to compel because "[b]inding precedent requires that an advisal accompany the terms of service link such that a user knows that the user is manifesting assent to legal terms.").

Likely understanding that its position is contrary to controlling authority, Lenovo cites a single case in support of their argument that Mr. Christy unambiguously manifested his assent. MTCA at 11:17-19 (citing *Van Den Heuvel*, 2017 WL 5133270, at *2–3, report and recommendation adopted, 2017 WL 6512945 (E.D. Cal. Dec. 20, 2017)). However, not only was that case decided prior to *Berman* and *Godun*—in which the Ninth Circuit made explicit that textual notices advising consumers that a particular act constitutes assent are required—such that the Court not specifically address the issue of a textual notice advising a consumer that taking a particular act constitutes assent—but it also concerned a checkout page which did, in fact, explicitly advised consumers, directly above a "COMPLETE BOOKING" button that "[b]y selecting to complete this booking I acknowledge that I have read and accept the above Rules & Restrictions, Terms of Use, and Privacy Policy." *See* RJN, Exs. A, B, *Van Den Heuvel v. Expedia Travel*, Case No. 2:16-cv-00567-JAM-AC (E.D. Cal. Sept. 26, 2017), ECFs 63-1, 63-2. Accordingly, Lenovo's only authority in support of its argument also supports Mr. Christy's position that he did not, and could not have, unambiguously manifested his assent to the Sales Agreement because there was no textual notice advising him what action constitutes assent.

As such, Lenovo's motion must be denied.

**E. No Stay is Warranted Because This Case is Not Arbitrable.**

Defendant's request to stay all proceedings must be denied for the same reasons its motion to compel arbitration fails—if no valid and enforceable arbitration agreement exists, there is no basis to stay the proceedings. *See, e.g.*, *Luna*, 236 F. Supp. 2d at 1174 ("When determining whether to stay proceedings pending arbitration, a court must consider whether the arbitration agreement validly was formed[.]") (citing *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002)). To the extent Defendant's request for a stay is construed as a request to stay discovery, that request should also be denied. *Mlejnecky v. Olympus Imaging Am., Inc*., 2011 WL 489743, at *6 (E.D. Cal. Feb. 7, 2011) ("[D]istrict courts look unfavorably upon such blanket stays of discovery.") (collecting cases).

## II. THE MOTION TO STRIKE CLASS ALLEGATIONS SHOULD ALSO BE DENIED.

Lenovo's Motion to Strike rests on the same purported agreement to arbitrate and its class-action waiver as its Motion to Compel Arbitration. MTS at 5-8. For all the reasons set forth above, Lenovo cannot show that Mr. Christy received reasonably conspicuous notice of the Sales Agreement or unambiguously manifested assent to it. *See* §I.B-D. Because no valid agreement to arbitrate was formed, there is no class action waiver to enforce, and the Motion to Strike fails. *Lee v. Plex, Inc.*, 773 F. Supp. 3d at 774 (where defendant "did not give reasonably conspicuous notice, and Plaintiff did not unambiguously manifest his assent to be bound by the[ agreement]…he is not bound by the class action waiver contained within those terms.").

Further, motions to strike class allegations "are disfavored, and Rule 23 is usually 'the better vehicle to test the propriety of class certification.'" *LeafFilter North*, 2025 WL 2337125, at *2 (citation omitted). "[I]t is proper to strike class allegations at the pleading stage" only "if any questions of law are clear and not in dispute, and under no set of circumstances could the claim or defense succeed." *Id.* (citation omitted). A motion under Rule 12(f) tests the sufficiency of the pleading itself and is decided without reference to matters outside of it. *See* Fed. R. Civ. P. 12(f); *Sidney-Vinstein*, 697 F.2d at 885. Accordingly, Courts regularly find that it is premature to decide a motion to strike class allegations at this stage of the litigation. *See, e.g., Graves*, 2013 WL 5945851, at *3-*4; *Cholakyan*, 796 F. Supp. 2d at 1246; *Boddie*, 2019 WL 3554383, at *3; *see also*

*T.K.*, 2018 WL 1812200, at *13; *In re Wal-Mart Stores*, 505 F. Supp. 2d at 615.

That is particularly the case here, where Lenovo's evidentiary submissions create genuine factual dispute as to how the checkout page actually appeared to Mr. Christy. The Morey Declaration describes the Sales Agreement notice as displayed in "black font contrasting with the white background," in "the same size font and format as the surrounding text," on a page that is "streamlined and lacking in clutter." Morey Decl. ¶ 11. But that characterization relies on screenshots stretched beyond any real computer or phone's aspect ratio, compressing into a single static image elements that in reality requires scrolling to reach the Sales Agreement. *See* §I.A-B. Mr. Christy's declaration confirms as much—he was not required to scroll the page past the "Place Order" button, did not do so, and as a result was never presented with or saw the Sales Agreement hyperlink at the bottom of the page. Christy Decl. ¶¶ 4-8. Accordingly, there is at least factual dispute here that forecloses resolution on a motion to strike. *Lugo v. City of Redondo Beach*, 2022 WL 170078890, at *2 (C.D. Cal Sep. 1, 2022).

It is also premature and inappropriate to strike Plaintiff's nationwide unjust enrichment claim because the choice of law analysis on which such a challenge depends is fact intensive and cannot be decided on the pleadings alone and because Plaintiff may narrow the class or propose state-based subclasses that render any purported conflicts among state unjust enrichment law immaterial. *In re SanDisk SSDs Litig*, 736 F. Supp. 3d at 792, 796; *Bruton*, 703 F.App'x. at 470; *Forcellati*, 876 F. Supp. 2d at 1159-60; *Corbett*, 544 F. Supp. 3d at 1012.

For these reasons, Lenovo's Motion to Strike Class Allegations should be denied.

## CONCLUSION

For the foregoing reasons, Defendant's motions to compel arbitration (ECF 30) and to strike Plaintiff's class actions (ECF 31) should be denied.

Dated: July 17, 2026

Respectfully Submitted,

*/s/ Victor J. Sandoval*
Victor J. Sandoval (SBN 344461)
**ALMEIDA LAW GROUP LLC**
3415 S. Sepulveda Blvd., Ste 1121

Los Angeles, California 90034
(562) 534-5907
victor@almeidalawgroup.com

David S. Almeida*
Stephanie T. Reed*
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, Illinois 60614
(708) 437-6476
david@almeidalawgroup.com
stephanie@almeidalawgroup.com

*Counsel for Plaintiff & the Proposed Classes*
**Pro Hac Vice Admitted*