**ALMEIDA LAW GROUP LLC**
Victor J. Sandoval (SBN 344461)
3415 S. Sepulveda Blvd., Ste 1121
Los Angeles, California 90034
(562) 534-5907
victor@almeidalawgroup.com

David S. Almeida (*pro hac vice*)
Stephanie T. Reed (*pro hac vice*)
849 W. Webster Avenue
Chicago, Illinois 60614
(708) 437-6476
david@almeidalawgroup.com
stephanie@almeidalawgroup.com

*Counsel for Plaintiff & the Proposed Classes*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

SPENCER CHRISTY, *individually and on behalf of all others similarly situated*,

Plaintiff,

vs.

LENOVO (UNITED STATES) INC.,

Defendant.

Case No. 3:26-cv-01133-CRB

**PLAINTIFF'S OPPOSITION TO DEFENDANT LENOVO (UNITED STATES) INC.'S MOTION TO DISMISS (ECF 32)**

**Date:** September 18, 2026
**Time:** 10:00 a.m.
**Location:** Courtroom 6 – 17th Floor
**Action Filed:** February 5, 2026

## TABLE OF CONTENTS

SUMMARY OF ARGUMENT ..... viii
INTRODUCTION ..... 1
FACTUAL BACKGROUND ..... 1
ARGUMENT ..... 3
I. Plaintiff Has Article III Standing ..... 3
Comprehensive Identifiers and Communications. ..... 3
Profiling Injury. ..... 3
Economic Injury. ..... 4
II. Plaintiff Plausibly States Claims for Violations of the ECPA and CIPA. ..... 4
A. Plaintiff Alleges Interception of Content in Transit. ..... 4
In Transit. ..... 4
Contents. ..... 5
B. Plaintiff Alleges Confidential Communications Under Section 632. ..... 6
Confidentiality. ..... 6
Consent. ..... 6
C. Neither the Party Exception Nor One-Party Consent Bars the Wiretap Claims. ..... 6
D. The Crime-Tort Exception Satisfies the One Party Consent Rule. ..... 7
Exemption. ..... 7
Purpose. ..... 8
E. Plaintiff Did Not Consent. ..... 9
Defendant's Declaration is Disputed.. ..... 9
No Prior Consent. ..... 10
No Actual Consent. ..... 10
III. Plaintiff States Privacy Torts. ..... 11
Reasonable Expectation. ..... 11
Highly Offensive. ..... 12
IV. Plaintiff States a CDAFA Claim. ..... 13
Damage or Loss.. ..... 13
Data from a Computer Network. ..... 14
Without Permission. ..... 14
V. Plaintiff States A UCL Claim. ..... 14
Statutory Standing.. ..... 14
Unlawful or Unfair. ..... 14
VI. Plaintiff States an Unjust Enrichment Claim. ..... 15
CONCLUSION ..... 15

# TABLE OF AUTHORITY

Page(s)

**Cases**

*Allison v. PHH Mortg.*,
2026 WL 1353827 (N.D. Cal. May 14, 2026) ... xii, 14

*Adams v. Cole Haan, LLC*,
2021 WL 4907248 (C.D. Cal. Mar. 1, 2021) ... xii, 15

*Anderson v. Nat'l Collegiate Athletic Ass'n*,
2026 WL 925519 (C.D. Cal. Mar. 25, 2026) ... viii, 3

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) ... xii, 15

*Baker v. Index Exchange Inc.,et al.*,
2026 WL 1734901 (N.D. Ill. June 16, 2026) ... *passim*

*Bowen v. Energizer Holdings, Inc.*,
118 F.4th 1134 (9th Cir. 2024) ... ix, 4

*Brown v. Google LLC*,
685 F.Supp.3d 909 (N.D. Cal. 2023) ... x, 6

*Brown v. Van's Int'l Foods, Inc.*,
2022 WL 1471454 (N.D.Cal. May 10, 2022) ... 15

*Buzek v. Pepsi Bottling Grp., Inc.*,
501 F. Supp. 2d 876 (S.D. Tex. 2007) ... 7

*Byars v. Goodyear Tire & Rubber Co.*,
654 F. Supp. 3d 1020 (C.D. Cal. 2023) ... ix, xi, 5, 9

*Calhoun v. Google LLC*,
526 F.Supp.3d 605 (N.D. Cal. 2021) ... xi, 10

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024) ... 10

*Campbell v. Fac*ebook Inc.,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ... 6, 10, 11

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) ... 4

*Camplisson v. Adidas Am., Inc.*,
809 F.Supp.3d 1095 (S.D. Cal. 2025) ... viii, 3

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010) ........ 8

*City of L.A. v. Barr*,
929 F.3d 1163 (9th Cir. 2019) ........ viii, 3

*Cody v. Boscov's, Inc.*,
658 F. Supp. 3d (C.D. Cal. 2023) ........ 7

*Deivaprakash v. Condé Nast*,
2025 WL 2541952 (N.D. Cal. Sept. 4, 2025) ........ viii, 4

*Deivaprakash v. Condé Nast*,
2025 WL 2779193 (N.D.Cal. Sept. 30, 2025) ........ viii, 4

*Dellasala v. Samba Tv, Inc.*,
2026 WL 1138358 (N.D.Cal. Apr. 21, 2026) ........ *passim*

*Doe v. Eating Recovery Ctr.*,
2024 WL 2852210 (N.D. Cal. June 4, 2024) ........ ix, 5

*Doe v. Eating Recovery Ctr., LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) ........ ix, 5

*Donohue v. Apple, Inc.*,
871 F. Supp. 2d 913 (N.D. Cal. 2012) ........ xii, 14

*Est. of Saunders v. Comm'r*,
745 F.3d 953 (9th Cir. 2014) ........ 4, 8

*Famous Birthdays, LLC v. Passes, Inc.*,
2025 WL 3049968 (C.D. Cal. Sept. 24, 2025) ........ xii, 14

*Gabrielli v. Haleon US Inc.*,
2025 WL 2494368 (N.D.Cal. Aug. 29, 2025) ........ 12

*Garcia v. Anschutz Ent. Grp., Inc.*,
2026 WL 1278912 (C.D. Cal. May 5, 2026) ........ xi, 13

*Gilligan v. Experian Data Corp.*,
2026 WL 32259 (N.D. Cal. Jan. 6, 2026) ........ ix, xi, 5, 13

*Greenley v. Kochava, Inc.*,
684 F.Supp.3d 1024 (S.D. Cal. 2023) ........ ix, 4

*Hall v. Time Inc.*,
158 Cal. App. 4th 847 (2008) ........ 14

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ........ *passim*

*Harris v. iHeartMedia, Inc.*,
2026 WL 247875 (N.D.Cal. Jan. 29, 2026) .................... viii, 4

*Hart v. TWC Prod. & Tech. LLC*,
526 F. Supp. 3d 592 (N.D. Cal. 2021) .................... 11, 12

*Hazel v. Prudential Fin., Inc.*,
2023 WL 3933073 (N.D. Cal. June 9, 2023) .................... ix, 5

*Heerde v. Learfield Commc'ns, LLC,*
741 F. Supp. 3d 849 (C.D. Cal. 2024) .................... ix, 5

*Heiting v. Taro Pharms. USA, Inc*.,
709 F.Supp.3d 1007 (C.D. Cal. 2023) .................... 5

*In Re. USA Today Co.*,
2026 WL 932655 (N.D. Cal. Apr. 6, 2026) .................... 3

*In re Apple Data Priv. Litig.*,
824 F. Supp. 3d 888 (N.D. Cal. 2026) .................... 6

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020).................... *passim*

*In re Facebook, Inc*.,
402 F.Supp.3d 767 (N.D.Cal. 2019) .................... xi, 11

*In re Google Assistant Privacy Litig*.,
546 F.Supp.3d 945 (N.D. Cal. 2021) .................... ix, 4

*In re Google, Inc*.,
2013 WL 5423918 (N.D.Cal. Sept. 26, 2013) .................... 10

*In re Meta Pixel Healthcare Litig.*,
647 F.Supp.3d 778 (N.D. Cal. 2022) .................... *passim*

*In re Vizio, Inc., Consumer Priv. Litig.,*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) .................... 5

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014).................... ix, 5

*Ingraham v. Cap. One Fin. Corp.,*
2026 WL 1755170 (N.D. Cal. May 22, 2026) .................... xi, 12

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) .................... x, 5, 7

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. 2022).................... xi, 10

*Jones v. Skullcandy, Inc.*,
2026 WL 699819 (S.D. Cal. Mar. 12, 2026) ........ *passim*

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F.Supp.3d 928 (N.D. Cal. 2023) ........ viii, 3

*Khamoosh, v. Politico*,
2025 WL 2822879 (N.D. Cal. Oct. 2, 2025)........ 3

*King v. Hard Rock Café Int'l (USA), Inc.*,
2025 WL 1635419 (E.D. Cal. June 9, 2025)........ ix, 6

*Krzyzek v. OpenX Techs., Inc.*,
817 F. Supp. 3d 857 (N.D. Cal. 2026) ........ x, 9

*Kwikset Corp. v. Superior Court*,
51 Cal. 4th 310 (2011) ........ ix, xii, 14

*Lakes v. Ubisoft, Inc.*,
777 F.Supp.3d 1047 (N.D.Cal. 2025) ........ 10

*Lau v. Gen Digital Inc.,*
2024 WL 1880161 (N.D. Cal. Apr. 3, 2024) ........ xii, 15

*Libman v. Apple, Inc.*,
2024 WL 4314791 (N.D. Cal. Sept. 26, 2024) ........ 14

*Licea v. Am. Eagle Outfitters, Inc.*,
659 F.Supp.3d 1072 (C.D. Cal. 2023) ........ 5

*Licea v. Old Navy, LLC*,
669 F. Supp. 3d 941 (C.D. Cal. 2023) ........ ix, 5

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000)........ 15

*Lynch v. Express Scripts Holding Co.*,
2025 WL 2224419 (N.D. Cal. Aug. 5, 2025)........ xi, 11

*M.G. v. Therapymatch, Inc.*,
2024 WL 4219992 (N.D. Cal. Sept. 16, 2024) ........ ix, 6

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021)........ 5

*Matera v. Google Inc.*,
2016 WL 5339806 (N.D. Cal. Sept. 23, 2016) ........ 9

*Medina v. Safe-Guard Prods., Internat., Inc.*,
164 Cal. App. 4th 105 (2008) ........ 14

*Opperman v. Path, Inc.*,
87 F.Supp.3d 1018 (N.D.Cal. 2014) ..................... 13

*Perez v. Romantix Online, Inc.*,
2025 WL 3085786 (N.D. Cal. Oct. 17, 2025) ..................... 14

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
402 F. Supp. 3d 615 (N.D. Cal. 2019) ..................... x, 8

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) ..................... x, 8

*Popa v. Microsoft Corp.*,
153 F. 4th 784 (9th Cir. 2025) ..................... viii, 3

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) ..................... *passim*

*Rodriguez v. Ford Motor Co.*,
722 F. Supp. 3d 1104 (S.D. Cal. 2024) ..................... 7

*Rodriguez v. Google LLC*,
2022 WL 214552 (N.D. Cal. Jan. 25, 2022) ..................... 5

*Rusow v. Skinspirit Essential LLC,*
2025 WL 4657637 (N.D. Cal. Oct. 15, 2025) ..................... x, xi, 9, 10

*Selby v. Sovrn Holdings, Inc.*,
2025 WL 2950164 (N.D. Cal. Oct. 17, 2025) ..................... 5

*Semien v. PubMatic Inc.*,
2026 WL 216333 (N.D.Cal. Jan. 27, 2026) ..................... xii, 13

*Smith v. Rack Room Shoes, Inc.*,
2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) ..................... ix, 5

*Smith v. Rack Room Shoes, Inc.*,
2026 WL 183852 (N.D.Cal. Jan. 23, 2026) ..................... 5

*Smith v. Rack Room Shows, Inc.*,
2025 WL 2210002 (N.D. Cal. Aug. 4, 2025) ..................... x, xii, 14

*Smith v. State Farm Mut. Auto Ins. Co.*,
93 Cal. App. 4th 700 (2001) ..................... xii, 15

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) ..................... ix, xi, 6

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ..................... 3

*Sussman v. Am. Broad. Cos.*,
186 F.3d 1200 (9th Cir. 1999) .......... x, 9

*Torres v. Prudential Fin., Inc.*,
2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) .......... ix, 4, 5

*Toy v. LifeLine Screening of Am. Ltd.*,
2024 WL 1701263 (N.D. Cal. Mar. 19, 2024) .......... *passim*

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021) .......... viii, 3

*Tsering v. Meta Platforms, Inc.*,
2026 WL 89320 (N.D. Cal. Jan. 12, 2026) .......... xii, 13, 14

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015) .......... xii, 14

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F.Supp. 3d 751 (N.D. Cal. 2023) .......... 5

*Valenzuela v. Nationwide Mut. Ins. Co.*,
686 F. Supp. 3d 969 (C.D. Cal. 2023) .......... x, 5, 6

*Xu v. Reuters News, Inc.*,
2025 WL 3035016 (Cal. Sup. Oct. 24, 2025) .......... viii, 4

**Statutes**

18 U.S.C. § 2511 .......... 5
Cal. Pen. Code § 631 .......... 5
Cal. Civ. Code § 53.5 .......... 6

**Regulations**

28 C.F.R. Part 202 .......... viii, 1
28 C.F.R. § 202.214 .......... 8, 9
28 C.F.R. § 202.228 .......... 8
28 C.F.R. § 202.401 .......... 8
28 C.F.R. § 202.505 .......... xi, 7
90 Fed. Reg. 1636 (Jan. 8, 2025) .......... x, xi, 7, 9

## SUMMARY OF ARGUMENT

Lenovo (United States) Inc. ("Lenovo" or "Defendant") embedded third-party tracking technologies on Lenovo.com ("Website") that intercepted and recorded plaintiff Spencer Christy's ("Plaintiff") communications and persistent identifiers, then made that data accessible to its parent, Lenovo Group Limited ("Lenovo Group"), who is subject to People's Republic of China ("PRC") intelligence laws requiring secret cooperation and unrestricted access to consumer data to PRC intelligence authorities. ¶¶13-15, 27, 101.[1] The federal Bulk Sensitive Data Rule (the "BSDR" or "Rule"), 28 C.F.R. Part 202, was enacted to prevent exactly that conduct. A court had already found that violations of the BSDR satisfies the ECPA's crime-tort exception; the result should be the same here. *Baker v. Index Exchange Inc., et al.*, 2026 WL 1734901, at *6-8 (N.D. Ill. June 16, 2026).

**Standing.** Plaintiff adequately alleges both intangible and economic injury sufficient for Article III standing, and need only show either to proceed. *City of L.A. v. Barr*, 929 F.3d 1163, 1173–74 (9th Cir. 2019); *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021).

Unlike Lenovo's authorities, Plaintiff's injury is not the mere collection of anonymous metrics and IP addresses, it is the collection of comprehensive, identifying data, that is matched with communications and reduced to behavioral profiles. *Camplisson v. Adidas Am., Inc.*, 809 F.Supp.3d 1095, 1106 (S.D. Cal. 2025); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F.Supp.3d 928, 940 (N.D. Cal. 2023); *Anderson v. Nat'l Collegiate Athletic Ass'n*, 2026 WL 925519, at *6 (C.D. Cal. Mar. 25, 2026); *Jones v. Skullcandy, Inc.*, 2026 WL 699819, at *5 (S.D. Cal. Mar. 12, 2026); *cf. Popa v. Microsoft Corp*., 153 F. 4th 784, 791 (9th Cir. 2025).

Plaintiff also states a profiling injury because the harm extends to how that data was used to build a profile and interfere with his anonymity. *Deivaprakash v. Condé Nast*, 2025 WL 2541952, at *4 n.4 (N.D. Cal. Sept. 4, 2025); *Xu v. Reuters News, Inc.*, 2025 WL 3035016, at *3 (Cal. Sup. Oct. 24, 2025); *Deivaprakash v. Condé Nast*, 2025 WL 2779193, at *2 (N.D.Cal. Sept. 30, 2025); *Harris v. iHeartMedia, Inc*., 2026 WL 247875, at *2 (N.D.Cal. Jan. 29, 2026); *Dellasala v. Samba Tv, Inc*., 2026 WL 1138358, at *3 (N.D.Cal. Apr. 21, 2026).

---

[1] Citations to "¶#" or "¶¶#" are to the Complaint (ECF 1); to "MTD" are to Defendant's Motion to Dismiss (ECF 32).

Finally, Plaintiff sufficiently alleges economic injury under a benefit-of-the-bargain and unjust-enrichment theory, which does not require proof of lost economic value of the data itself. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (2011); *Greenley v. Kochava, Inc.*, 684 F.Supp.3d 1024, 1038 (S.D. Cal. 2023); *Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1144–46 (9th Cir. 2024); *In re Google Assistant Privacy Litig.*, 546 F.Supp.3d 945, 971 (N.D. Cal. 2021), *Toy v. LifeLine Screening of Am. Ltd.*, 2024 WL 1701263, at *2 (N.D. Cal. Mar. 19, 2024); ¶¶94-97, 253-261.

**ECPA and CIPA § 631.** The in-transit element is sufficiently pled at the motion to dismiss stage even with less detail than alleged here; Lenovo's reliance on summary-judgment decisions fails. Compare *Hazel v. Prudential Fin., Inc.*, 2023 WL 3933073, at *3 (N.D. Cal. June 9, 2023) (Breyer, J.) and *Doe v. Eating Recovery Ctr.*, 2024 WL 2852210, at *1 (N.D. Cal. June 4, 2024); with *Doe v. Eating Recovery Ctr., LLC*, 806 F. Supp. 3d 1109, 1117-18 (N.D. Cal. 2025) and *Torres v. Prudential Fin., Inc.*, 2025 WL 1135088, at *4–5 (N.D. Cal. Apr. 17, 2025) (Breyer, J.); *see also Heerde v. Learfield Commc'ns, LLC* 741 F. Supp. 3d 849, 863 (C.D. Cal. 2024); *Byars v. Goodyear Tire & Rubber Co.*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023); *Licea v. Old Navy, LLC*, 669 F. Supp. 3d 941, 946 (C.D. Cal. 2023).

The full-string URLs at issue, which reveal Plaintiff's search queries and the specific products and pages he viewed, constitute "contents" of a communication, distinguishing the referrer-header cases Lenovo cites. Compare ¶¶13, 58, 96, 100, 135; *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 605 (9th Cir. 2020) ("*Facebook*"); *Gilligan v. Experian Data Corp.*, 2026 WL 32259, at *3 (N.D. Cal. Jan. 6, 2026); and *Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *4 (N.D. Cal. Apr. 4, 2025) with *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106–08 (9th Cir. 2014); *King v. Hard Rock Café Int'l (USA), Inc.*, 2025 WL 1635419, at *4 (E.D. Cal. June 9, 2025).

**CIPA § 632.** Plaintiff reasonably expected that the volume of identifying and browsing data collected here would not be routed to third parties and covered foreign persons, and reasonableness of that expectation is a factual question not resolved at the pleading stage. *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 943 (N.D. Cal. 2024); *M.G. v. Therapymatch, Inc.*, 2024 WL 4219992,

at *5 (N.D. Cal. Sept. 16, 2024); *Skullcandy*, 2026 WL 699819, at *18. The BSDR also gives Plaintiff reasonable confidentiality expectations because communications are confidential where "protected by federal law," *In re Meta Pixel Healthcare Litig.*, 647 F.Supp.3d 778, 799 (N.D. Cal. 2022) and Lenovo's omissions support Plaintiff's confidentiality expectations. *See Brown v. Google LLC*, 685 F.Supp.3d 909, 936-37 (N.D. Cal. 2023)

**Party Exception and Consent.** A defendant can be liable for aiding a third party's concurrent interception, and the third parties here are not mere extensions of Lenovo because they are capable of using, and do use, the data for their own purposes. *Valenzuela v. Nationwide Mut. Ins. Co*., 686 F. Supp. 3d 969, 976-77 (C.D. Cal. 2023); *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 897–900 (N.D. Cal. 2023) (Breyer, J.).

**Crime-Tort Exception.** The crime-tort exception overrides consent. *Smith v. Rack Room Shows, Inc.*, 2025 WL 2210002, at *5 (N.D. Cal. Aug. 4, 2025). The exception is satisfied here because Lenovo's interceptions were undertaken for the independent purpose of violating the BSDR and building privacy-invasive profiles, and purpose is generally a jury question. *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022); *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 402 F. Supp. 3d 615, 687 (N.D. Cal. 2019). A federal court recently held that a BSDR violation satisfies the crime-tort exception. *Baker*, 2026 WL 1734901, at *6-8. Courts regularly hold that invasion of Plaintiff's privacy through profiling satisfies the crime-tort exception. *Dellasala*, 2026 WL 1138358, at *4-5, 9; *Riganian v. LiveRamp Holdings, Inc*., 791 F. Supp. 3d 1075, 1086-90 (N.D. Cal. 2025); *Krzyzek v. OpenX Techs., Inc.*, 817 F. Supp. 3d 857, 869 (N.D. Cal. 2026). Both are alleged and either suffices. ¶¶ ¶¶14-17, 65-66, 69-70, 78-80, 85, 101-102, 139-156.

A purpose of facilitating blackmail is expressly alleged here and is part of the BSDR's regulatory record. *Rusow v. Skinspirit Essential LLC,* 2025 WL 4657637, at *15 (N.D. Cal. Oct. 15, 2025) (citing *Sussman v. Am. Broad. Cos.*, 186 F.3d 1200, 1202–03 (9th Cir. 1999)); 90 Fed. Reg. 1636, 1638 (Jan. 8, 2025); ¶¶16-17, 69-70, 81-93, 139-140, 153-154.

Whether the BSDR's "ordinarily incident to" order fulfillment exemption applies is unfit for resolution on the pleadings. *Baker*, 2026 WL 1734901, at *6-8. Even if resolvable, the

exemption Lenovo relies on covers only payment and delivery information, not behavioral surveillance data. 28 C.F.R. § 202.505(b)(5); 90 Fed. Reg. 1,636, 1,678 (Jan. 8, 2025).

**No Consent.** Lenovo's reliance on natters outside of the pleadings is improper because their accuracy is disputed, and even considered, they fail to establish adequate notice or consent given the inconspicuous, near-invisible, easily dismissed banner. *Byars*, 654 F. Supp. 3d at 1026; *Skullcandy*, 2026 WL 699819, at *16. Nor was there prior consent because the tracking technologies began operating immediately before consent could be obtained. *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *2 (9th Cir. 2022); ¶¶55-58, 63-64, 98-100, 127-138.

Nor was there actual consent because Lenovo's generic inconspicuous disclosures did not sufficiently notify users of the practices at issue. *Calhoun v. Google LLC*, 526 F.Supp.3d 605, 620 (N.D. Cal. 2021); *In re Meta Pixel Healthcare Litig.*, 647 F.Supp.3d at 791, 793–94; *Rusow*, 2025 WL 4657637, at *9; *In re Facebook, Inc.*, 402 F.Supp.3d 767, 792 (N.D.Cal. 2019); *Lynch v. Express Scripts Holding Co.*, 2025 WL 2224419, at *9 (N.D. Cal. Aug. 5, 2025); ¶¶98-100.

**Privacy Torts.** Whether a reasonable expectation of privacy existed and whether the intrusion was highly offensive are highly factual inquiries rarely resolved at the pleading stage. *Facebook*, 956 F.3d at 601; *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 799 (N.D. Cal. 2022). Plaintiff has a reasonable expectation of privacy where data collection was of the scale and type alleged in the complaint and occurred through an undisclosed program on which defendant's privacy policy was at least ambiguous. *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1089–90 (N.D. Cal. 2022); *see also Riganian*, 791 F. Supp. 3d at 1086; *Ingraham v. Cap. One Fin. Corp.,* 2026 WL 1755170, at *8 (N.D. Cal. May 22, 2026); *see also Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 945 (N.D. Cal. 2024).

Even if offensiveness could be resolved (and it cannot) *Toy*, 2024 WL 1701263, at *3, and even if there was an ability to validly consent (there was not) unauthorized collection prior to the ability to reject tracking technologies is highly offensive. *Garcia v. Anschutz Ent. Grp., Inc.,* 2026 WL 1278912, at *8 (C.D. Cal. May 5, 2026).

In any event, covert interception of Plaintiff's communications, transmission of that data to a covered foreign entity, and the resulting construction of behavioral dossiers for use in blackmail,

coercion, and the targeting of Americans is highly offensive. *See, e.g., Gilligan*, 2026 WL 32259, at *2; *Semien v. PubMatic Inc.*, 2026 WL 216333, at *6-7 (N.D.Cal. Jan. 27, 2026); *Riganian*, 791 F.Supp.3d at 1088; *Dellasala*, 2026 WL 1138358, at *4; *Hammerling,* 615 F. Supp. 3d at 1090; ¶¶16-17, 55-59, 63-66, 69-70, 78-80, 85, 101-102, 138. Although unnecessary at this stage, each of the four offensiveness factors favors Plaintiff. *Facebook*, 956 F.3d at 606.

**CDAFA.** A defendant's unjust profit from a plaintiff's data can constitute "damage or loss" under the statute, *Rack Room*, 2025 WL 2210002, at *3; *Tsering v. Meta Platforms, Inc.*, 2026 WL 89320, at *7 (N.D. Cal. Jan. 12, 2026). Lenovo cites *Allison v. PHH Mortg.*, but that supports Plaintiff's Section 502(c)(1) claim. 2026 WL 1353827, at *8 (N.D. Cal. May 14, 2026). And, unlike there, computer systems and networks are at issue here so Plaintiff states Section 502(c)(2) and (8) claims. *Famous Birthdays, LLC v. Passes, Inc.*, 2025 WL 3049968, at *4 (C.D. Cal. Sept. 24, 2025); *United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2015).

**UCL.** Plaintiff pleads a benefit-of-the-bargain injury tied to a specific privacy-expecting purchase. *Kwikset*, 51 Cal. 4th at 323; *Toy*, 2024 WL 1701263, at *2–3; *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 921 (N.D. Cal. 2012). The unlawful and unfair prongs are independently supported by the BSDR violation and are not duplicative of Plaintiff's other statutory claims. *Smith v. State Farm Mut. Auto Ins. Co.*, 93 Cal. App. 4th 700, 718 (2001).

**Unjust Enrichment.** A claim for unjust enrichment may proceed as a quasi-contract claim for restitution, and equitable relief may be pled in the alternative at this stage. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015); *Adams v. Cole Haan, LLC*, 2021 WL 4907248, at *1 (C.D. Cal. Mar. 1, 2021); *Lau v. Gen Digital Inc.,* 2024 WL 1880161, at *5 (N.D. Cal. Apr. 3, 2024), *aff'd Karwowski v. Gen Digital, Inc.,* 2025 WL 3002610 (9th Cir. Oct. 27, 2025)

## INTRODUCTION

This case concerns Lenovo systematically providing a foreign adversary access to Americans' sensitive identifiers and behavioral data. When consumers visit Lenovo's website, its network of surveillance technologies silently intercept their browsing activity—capturing persistent identifiers, full-string URLs, IP addresses, advertising IDs, and cookie data—and Lenovo provides access to that information to the Lenovo Group. ¶¶10, 13-15, 55-59, 101-102.

The Lenovo Group is headquartered in the PRC and is subject to PRC intelligence laws requiring companies to cooperate with intelligence agencies and to grant authorities unrestricted access to user data. ¶¶27-30. In the hands of intelligence agencies, user data is used to build detailed behavioral profiles used for surveillance and blackmail. ¶¶16-17, 69-70. Lenovo has long been recognized as a national security threat and has documented ties to state-run cyberespionage campaigns. ¶¶74-77. Lenovo itself concedes that it transfers its users' data to the Lenovo Group and the PRC. ¶¶78-85. And, the Lenovo Group's own annual reports acknowledge the risk of the tension between compliance with the U.S. data security law at issue here and PRC laws obligating persons subject to PRC jurisdiction to cooperate with PRC intelligence laws. ¶¶87-89.

Spencer Christy ("Plaintiff") alleges that by assisting in the collection of, and providing the Lenovo Group access to, the bulk sensitive personal data of millions of Americans, Lenovo violated the BSDR, 28 C.F.R. Part 202, a national security regulation prohibiting U.S. companies, like Lenovo, from utilizing tracking technologies to provide access to Americans' bulk sensitive personal data to foreign entities, like the Lenovo Group, tied to countries of concern, including the PRC. ¶¶2-18, 36-54, 72-93. IT also violated the Electronic Communications Privacy Act ("ECPA"), the California Invasion of Privacy Act ("CIPA"), California's Unfair Competition Law ("UCL"), and constitutes invasion of privacy, intrusion upon seclusion, a violation of the Comprehensive Computer Data Access and Fraud Act ("CDAFA"), and unjust enrichment. ¶¶122-261. Each claim is well plead, and no claim should be dismissed.

## FACTUAL BACKGROUND

Lenovo makes, markets, and sells computers and related products through www.lenovo.com (the "Website"). ¶¶13, 26. Lenovo is a U.S.-based operating subsidiary of

Lenovo Group Limited, whose principal operations are headquartered in Beijing, China. ¶27. The Lenovo Group has deep ties to the PRC is subject to PRC intelligence laws compelling cooperation with state surveillance and granting authorities complete access to private user data. ¶¶29-34.

Effective April 8, 2025, the Department of Justice promulgated the BSDR to restrict U.S. persons from engaging in "covered data transactions" that give "covered persons" in "countries of concern," including the PRC, access to Americans' bulk sensitive personal data. ¶¶2, 36-46. Lenovo is a "U.S. person" and the Lenovo Group is a "covered person" under the Rule. ¶¶53, 142-43. Lenovo has long been the subject of federal national security scrutiny, including a 2016 Department of Defense warning and 2023 inquiries from the House Select Committee on the CCP. ¶¶74-77. Lenovo participated in the BSDR rulemaking through an industry association, acknowledged data-access compliance risk in its annual reports, and continued allowing access to data notwithstanding the Rule. ¶¶82, 86-89.

Bulk sensitive data expressly includes network-based identifiers such as IP addresses and cookie data, advertising identifiers, and device-based identifiers. ¶45. Lenovo's Privacy Policy admits that it transits these identifiers to the Lenovo Group. ¶78. To that end, Lenovo intentionally deployed dozens of surveillance technologies on the Website—pixels, software development kits, scripts, and cookies supplied by third-parties including TikTok, Facebook, Microsoft, Google, Adobe, Index Exchange, Snap, and LiveRamp ("Tracking Technologies"). ¶¶55-57. Through these surveillance technologies, Lenovo assists third parties in intercepting persistent identifiers (IP addresses, advertising IDs, and cookie data) and the full-page context of a user's visit, including full-string URLs revealing the pages and products viewed, without obtaining valid consent. ¶¶58, 63-64. Millions U.S. users visit the Website monthly and are subjected to these practices. ¶¶59-60.

In November and December 2025, Plaintiff visited the Website on multiple occasions, navigated product pages whose full-string URLs displayed the products he viewed and reflected that he was searching for a discounted gaming computer and ultimately purchased one. ¶¶95-97. While he browsed, code Lenovo implemented, operated by the Tracking Technology providers, fired automatically, initiating requests that transmitted his identifiers and full-string URLs to third-party servers contemporaneously with his communications to the Website, before he could detect

or stop them. ¶¶98-100, 129-33. That information was used to enrich persistent profiles; and Lenovo used it to make it accessible to the Lenovo Group, conduct Lenovo's own Privacy Statement concedes. ¶¶78-79, 85, 101-02. Plaintiff did not consent to the Statement. ¶¶105-06.

## ARGUMENT

### I. PLAINTIFF HAS ARTICLE III STANDING.

For Article III standing, "a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete[.]" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). While "monetary harms," i.e., economic injuries, are necessarily "a concrete injury…intangible harms" are concrete for when they have a "'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit[.]" *TransUnion*, 141 S. Ct. at 2204.

Lenovo argues that Plaintiff has not shown an intangible injury, but fails to address Plaintiff's alleged economic injury. *Compare* Mot. at 7-8 *with* ¶¶94-97, 189-199, 259-261. Plaintiff need not prevail on both forms—"a plaintiff need only show a slight injury for standing." *Barr*, 929 F.3d at 1173–74. Nonetheless, Plaintiff satisfies both.

**Comprehensive Identifiers and Communications.** Lenovo relies heavily on *Popa* where, the third party collected purely anonymous engagement metrics with no profile construction and no transmission to a third-party for independent use. 153 F. 4th at 789, 791 It also cites two cases addressing only the collection of IP addresses and non-identifying browser and device data. *In Re. USA Today Co.* 2026 WL 932655, at *2 (N.D. Cal. Apr. 6, 2026); *Khamoosh, v. Politico* 2025 WL 2822879, at *2 (N.D. Cal. Oct. 2, 2025). Here, by contrast, the information is expansive, identifying, includes communications, is compiled in profiles, and is sufficient for standing. *Katz-Lacabe*, 668 F.Supp.3d at 940 (standing based on the "ability to amass vast amounts of personal data for the purpose of identifying individuals and aggregating their many identifiers") (cleaned up); *Camplisson*, 809 F.Supp.3d at 1106 (distinguishing *Popa* where third-parties collected identifiers and communications); *Anderson*, 2026 WL 925519, at *6 (similar); *Skullcandy*, 2026 WL 699819, at *5 (similar); ¶¶10-16, 58-59, 60-66, 69, 100-01, 130, 135, 146-148, 214, 234, 236.

**Profiling Injury.** Lenovo fails to address that Plaintiff's allegations also suffice "because the privacy violation extends beyond the collection of just [Plaintiff's] IP address and metadata; it

encompasses how that collection allegedly allowed the third parties to: (1) build a profile reflecting his personal information; and (2) interfere with his ability to remain anonymous." *Deivaprakash*, 2025 WL 2541952, at *4, n.4; *Xu*, 2025 WL 3035016, at *3 (no "expectation of privacy to the collected information does not preclude [Plaintiff] from alleging an" injury because "Plaintiff alleges that the collected information was used to build a profile"); *Deivaprakash,* 2025 WL 2779193, at *2 (same); *Harris*, 2026 WL 247875, at *2 (similar); *Dellasala*., 2026 WL 1138358, at *3 (similar); ¶¶10-16, 58-59, 60-66, 69, 100-01, 130, 135, 146-148, 214, 229-234, 236.

**Economic Injury.** Lenovo fails to address that Plaintiff also sufficiently alleges Defendant derived an unlawful economic benefit at Plaintiff's expense. *Compare Greenley*, 684 F.Supp.3d at 1038 ("there is no constitutional requirement that Plaintiff demonstrate lost economic value" of data), *with* ¶¶106, 189-199, 259-261. Lenovo also fails to address that Plaintiff's alleged overpayment and benefit-of-the-bargain injuries. *Compare In re Google Assistant Privacy Litig.*, 546 F.Supp.3d at 971, *with* ¶¶94-97, 253-261; *see also Bowen*, 118 F.4th at 1144-46; *Toy*, 2024 WL 1701263, at *2 (omission supports benefit-of-the-bargain injury).[2]

## II. PLAINTIFF PLAUSIBLY STATES CLAIMS FOR VIOLATIONS OF THE ECPA AND CIPA.

### A. Plaintiff Alleges Interception of Content in Transit.

**In Transit.** Plaintiff alleges the Tracking Technologies executed automatically during the page-load process, capturing and rerouting his communications to third-party servers simultaneously with their transmission to the Website, before he could detect or consent to the transmissions, ¶¶132-37, and that the Tracking Technologies "intended to learn, and did learn" the content of those communications as they were exchanged. ¶167, 163. Lenovo cites to the summary judgment opinions in *Torres* and *Eating Recovery,* both of which turned on developed factual

---

[2] Lenovo also argues in footnote 5 that Plaintiff lacks injunctive relief standing because he won't "be harmed in the future." This arguments is "deemed waived," *Est. of Saunders v. Comm'r*, 745 F.3d 953, 962 (9th Cir. 2014), and Plaintiff alleges a reasonable fear that "confidential communications will continue to be unlawfully recorded if they use the Website," ¶185, and an ongoing "reasonable expectation of privacy... in [his] Internet browsing activity, online communications, and the personal data that Defendant surreptitiously collects." ¶210; see also ¶226. This "is sufficient to allege a threat of future harm for standing to seek injunctive relief." *Toy*, 2024 WL 1701263, at *1. Plaintiff can also seek injunctive relief because Defendant has not ceased the practices at issue. *Campbell v. Facebook, Inc*., 951 F.3d 1106, 1120 (9th Cir. 2020).

records. *Torres*, 2025 WL 1135088, at *4-5 (Breyer, J.); *Eating Recovery II*, 806 F. Supp. 3d at 1117.[3] By contrast, on a motion to dismiss, both this Court and Judge Chabbria found this element well-pled with even less detailed allegations than here. *Hazel*, 2023 WL 3933073, at *3; *Eating Recovery* 2024 WL 2852210, at *1.[4] The should find the same here.

Lenovo misconstrues the complaint in focusing on Lenovo's subsequent use of the intercepted communications. Mot. at 9:13-22. Both CIPA and ECPA forbid the "use" of intercepted communications, in addition to interceptions, and aiding in the same. *See* ¶163 (citing Cal. Pen. Code § 631(a)); ¶125 (citing 18 U.S.C. § 2511(1)(d)); *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023) (Breyer, J. discussing same); *Valenzuela.*, 686 F. Supp. 3d at 979; *see also Smith v. Rack Room Shoes, Inc.*, 2026 WL 183852, at *2 (N.D.Cal. Jan. 23, 2026). The Tracking Technologies' contemporaneous capture during page load is the interception, Lenovo's subsequent "use" of what they already seized is an additional basis for liability. *See* ¶¶14, 101, 134.

**Contents.** Contrary to Lenovo's argument, full-string URLs that revealed Plaintiff's search queries and the specific pages and products he viewed are content. *Gilligan*, 2026 WL 32259, at *3; *Smith.*, 2025 WL 1085169, at *4; *Selby v. Sovrn Holdings, Inc*., 2025 WL 2950164, at *3 (N.D. Cal. Oct. 17, 2025) *with* ¶¶96-97, 100. He need not plead the exact URL strings. *Byars*, 654 F. Supp. 3d at 1027. *Zynga* addressed referrer headers conveying only the address of a page, not search queries or products the user viewed. *In re Zynga Privacy Litig.*, 750 F.3d at 1106-08; *see also Facebook*, 956 F.3d at 605 (distinguishing *Zynga* and referrer headers from substantive URLs). Lenovo's only case addressing URLs, *King*, is materially distinguishable because there, unlike here,

---

[3] Lenovo's other cases are off point, too. *Mastel v. Miniclip SA*, involved copying and pasting content. 549 F. Supp. 3d 1129, 1136 (E.D. Cal. 2021). *Rodriguez v. Google LLC*, involved "logging and then transmitting" not simultaneously transmitting during page load. 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022). In *In re Vizio, Inc., Consumer Priv. Litig.*, Plaintiff did not allege "when Vizio supposedly intercepted their communications" here it was during page load. 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017). The others "restate[d] the pleading requirement of real time interception." *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F.Supp. 3d 751, 758 (N.D. Cal. 2023); *Heiting v. Taro Pharms. USA, Inc.*, 709 F.Supp.3d 1007, 1019 (C.D. Cal. 2023); *Licea v. Am. Eagle Outfitters, Inc.*, 659 F.Supp.3d 1072, 1084 (C.D. Cal. 2023).

[4] *See also Heerde,*741 F. Supp. 3d 863 (redirecting to third-party servers during page-load suffice); *Toy*, 2024 WL 1701263, at *1 (similar) *Byars*, 654 F. Supp. 3d at 1027, (same); *Licea*, 669 F. Supp. 3d at 946 (same).

the plaintiff did not allege that he viewed any specific pages nor that the URLs revealed the content of those pages such that the Court could infer that content had been transmitted. *Compare* 2025 WL 1635419, at *4 *with* ¶¶13, 96-100.

**B. Plaintiff Alleges Confidential Communications Under Section 632.**

**Confidentiality.** Communications are confidential where, as here, a party reasonably expects that confidentiality. *Skullcandy*, 2026 WL 699819, at *18; *also compare Therapymatch,* 2024 WL 4219992, at *5 (rejecting argument that internet communications are presumptively non-confidential); *but see In re Apple Data Priv. Litig.*, 824 F. Supp. 3d 888, 899 (N.D. Cal. 2026) (addressing only withdrawal of consent).[5] Plaintiff reasonably expected that the volume of identifying and browsing data at issue would not be routed to third parties and covered persons. *Skullcandy*, 2026 WL 699819, at *18. The BSDR also gives Plaintiff reasonable confidentiality expectations because communications are confidential where "protected by federal law". *In re Meta Pixel Healthcare Litig.*, 647 F.Supp.3d at 799. Further, Lenovo's omissions support Plaintiff's confidentiality expectations. *See Brown*, 685 F.Supp.3d at 936-37; ¶¶63-64, 78-80, 85, 117, 138 To the extent any ambiguity remains, reasonableness of privacy expectations is a question of fact "too difficult to resolve at the pleadings stage." *YETI Coolers,* 754 F. Supp. 3d at 943.

**Consent.** Lenovo's consent argument relies on an insufficient basis. *See infra* § II.e.

**C. Neither the Party Exception Nor One-Party Consent Bars the Wiretap Claims.**

Lenovo argues that a party to a communication cannot be liable under CIPA 631 but even its authority recognizes that a party can be liable for aiding a third party in concurrently intercepting communications. *Compare Valenzuela*, 686 F. Supp. 3d at 976-77 *with* ¶¶56-59, 98-100, 127-133, 165-167. To the extent Lenovo argues that the third parties were mere extensions of Lenovo, that argument fails because Plaintiff alleges the third parties have the capability to use Plaintiff's data

---

[5] *Campbell v. Facebook Inc.*, involved the "scanning of messages sent on Facebook's social media website"—communications that, unlike an individual's web browsing activity, are by their nature relayed to another party. 77 F. Supp. 3d 836, 838 (N.D. Cal. 2014). *King*, addressed only whether allegations related to " 'guest records' under California Civil Code Section 53.5(a)" conferred confidentiality, but found them insufficient because the plaintiff did not allege his communications constituted "guest records" under the statute. 2025 WL 1635419, at *6.

for their own purposes. ¶¶56-59, 65-66, 69, 193. *Javier* also supports Plaintiff's position, not Lenovo's. 649 F. Supp. 3d at 897-900. There, this court found that a similar tracking technology was not a party extension and Lenovo fails to explain how this case is different, because it isn't. *Id.*[6] Unlike *Cody v. Boscov's, Inc.*, here third parties have the capability to use, and the third parties and Lenovo do use the information. *Compare* 658 F. Supp. 3d 799, 782 (C.D. Cal. 2023) *with* ¶¶56-59, 65-66, 101-102, 192-193.

**D. The Crime-Tort Exception Satisfies the One Party Consent Rule.**

**Exemption.** Lenovo's response to the applicability of the BSDR is to argue that it is exempt. MTD at 12:15-12:4. In *Baker*, a court recently confirmed that BSDR violations using the type of surveillance technologies at issue here satisfy the crime-tort exception, and held that factual disputes over exceptions to those allegations are not resolved on the pleadings. 2026 WL 1734901, at *7-8. Even setting that aside, the exemption for transactions "ordinarily incident to and part of" a sale transaction under § 202.505(a)(4) doesn't apply broadly to everything an e-commerce website does. *Buzek v. Pepsi Bottling Grp., Inc.*, 501 F. Supp. 2d 876, 881 (S.D. Tex. 2007) ("incident to" means "closely related to; naturally appearing with"). Lenovo relies on Example 5, but that example exempts only "bulk contact information, payment information..., and delivery address"—i.e., data needed to complete a purchase. 28 C.F.R. § 202.505(b)(5). Plaintiff doesn't allege Lenovo transferred payment or delivery information to fulfill his order; he alleges Lenovo's Tracking Technologies intercepted persistent identifiers and full-string URLs revealing his browsing activity, wholly independent of and beginning prior to checkout. ¶¶10, 56-59, 98-100. Extending Example 5 to cover this would swallow the Rule—which is why DOJ rejected broadening § 202.505 in the first place, warning it "may inadvertently broaden the exemption to cover [precisely what] the rule intends to regulate." 90 Fed. Reg. 1,636, 1,678 (Jan. 8, 2025). Lenovo's industry group asked DOJ for this kind of broad exemption, and DOJ said no. ¶¶82-84.[7]

---

[6] Lenovo cites *Graham* and *Williams* for the relevant capability of use standard but this Court has disagreed with those cases *Rodriguez v. Ford Motor Co*., 722 F. Supp. 3d 1104, 1121 (S.D. Cal. 2024) (discussing disagreement between *Graham* and *Javier* and agreeing with *Javier*).

[7] Lenovo also argues in footnote 12 that the conduct alleged (1) is not a covered data transaction

**Purpose.** To satisfy the crime-tort exception the criminal or tortious purpose must exist at the time of interception, *Newman*, 51 F.4th at 1136, and be separate from the interception itself, *Caro v. Weintraub*, 618 F.3d 94, 101 (2d Cir. 2010). Purpose is generally a question for the jury. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 402 F. Supp. 3d 615, 687 (N.D. Cal. 2019). Plaintiff alleges that at the time of interception Lenovo intended to use the intercepted information to provide access to users' personally identifiable communications to the Lenovo Group in violation of the BSDR and to build profiles. ¶¶14-17, 65-66, 69-70, 101-102, 139-155. Indeed, its Privacy Policy disclosed those purposes. ¶¶78-80, 85. Plaintiff also alleges the interceptions were performed to further (1) permitting access to bulk sensitive personal data to a covered person in violation of the BSDR, and (2) the construction of privacy invasive profiles—both of which are independent of and separate from the interception itself and both are which suffice

---

under 28 C.F.R. § 202.214(b)(9) and (2) not a restricted transaction under 28 C.F.R. § 202.401(a). These arguments are "deemed waived," *Saunder*, 745 F.3d at 962, present factual disputes not appropriate for resolution here, *Baker,* 2026 WL 1734901, at *7, and are incorrect:

***First***, 28 C.F.R. § 202.214(b)(9) cuts against Lenovo; that example involves two academic researchers exchanging data for a joint paper, where "the U.S. person does not provide to or receive from the covered person...any…consideration," and the data flows in both directions as part of a collaborative, non-commercial research exchange. 28 C.F.R. § 202.214(b)(9). Here, Plaintiff alleges that Lenovo operates a commercial website, that Lenovo and Lenovo Group monetize consumer data obtained through the Tracking Technologies, and Lenovo derives commercial value from providing the Lenovo Group with access to bulk U.S. sensitive personal data as part of that ongoing commercial relationship between a subsidiary and its parent. ¶¶56-61, 189-193. Unlike Example 9's disinterested academic exchange, this data is valuable to, Lenovo's and the Lenovo Group's commercial operations. *See, e.g.,* ¶193. Data brokerage does not require a line-item sale; it requires only a "commercial transaction... involving the transfer of data" to a party that "did not collect or process the data directly from the individuals linked... to the... data," 28 C.F.R. § 202.214, which is exactly what Plaintiff alleges. ¶¶61, 78-80, 101-102, 150.

***Second***, Lenovo ignores that Plaintiff expressly alleges the existence of an investment agreement—Lenovo Group is Lenovo's parent and largest-shareholder. ¶¶26-35. That corporate ownership structure is itself an "investment agreement" under 28 C.F.R. § 202.228, which defines the term to include any "arrangement" involving "direct or indirect ownership interests in or rights in relation to... a U.S. legal entity"—precisely what the Lenovo Group's ownership stake in Lenovo represents. ¶¶19-20, 26-35, 53, 141-142. This investment agreement, in turn, renders the underlying data transaction a "restricted transaction" under 28 C.F.R. § 202.401(a), which prohibits a U.S. person from "knowingly engag[ing] in a covered data transaction involving a vendor agreement, employment agreement, or investment agreement with a country of concern or covered person" absent compliance with the Rule's security requirements that Lenovo lacks. ¶¶49, 54, 80, 140, 154.

to allege the exception. *Baker,* 2026 WL 1734901, at *8; *Dellasala*, 2026 WL 1138358, at *4-5, 9; *Riganian* 791 F. Supp. 3d at 1086; *Krzyzek*, 817 F. Supp. 3d at 869.

In *Rusnow* this Court relied on the lack of a "purpose of facilitating some further impropriety, such as blackmail." *Rusnow*. 2025 WL 4657637, at *15. (citing *Sussman*, 186 F.3d 1200, 1202-3). Here, a purpose of facilitating blackmail is expressly alleged. ¶¶16-17, 69-70. The Complaint also expressly alleges that Lenovo had knowledge of the illegality of its conduct and acted with a purpose to commit that conduct nonetheless. ¶¶81-93, 139-140, 153-154. Indeed, the BSDR was enacted to prevent countries of concern from compiling data and profiles for blackmail purposes, *see* 90 Fed. Reg. 1636, 1638 (Jan. 8, 2025), and specifically forbids the transmission of Americans' data to covered entities through "tracking pixels," "software development kits," and access to associated databases at issue here. 28 C.F.R. §§ 202.214(b)(7),(8), 202.228(c)(2),(3); ¶8 & n.2. Accordingly, the alleged primary purpose to violate the BSDR through the Tracking Technologies satisfies the exception. *Sussman*, 186 F.3d at 1202. Alternatively, the exception is satisfied by the alleged primary purpose to profile and commit privacy torts, which was also lacking from *Rusnow,* 2025 WL 4657637, at *15. *See* §III, ¶¶200-243.

**E. Plaintiff Did Not Consent.**

As "the party seeking the benefit of the exception," Defendant must prove consent. *Matera*, 2016 WL 5339806, at *17. It has not done so.

**Defendant's Declaration is Disputed.** Lenovo's consent argument depends entirely on the Exhibits to its RJN. MTD at 13:17-25. As explained in the concurrently filed Opposition to the RJN, none is judicially noticeable or incorporated by reference for these purposes, both Exhibit 1 and 2 postdate the period at issue, and Exhibit 1 is a six-page, stitched, full-scroll capture that obscures the banner's true size and placement relative to what a user would actually see on a single screen. Nor does Lenovo establish that Plaintiff "had any reason to scroll to the bottom of the webpage or otherwise saw" the banner or link it relies on. *Byars*, 654 F. Supp.3d at 1026. Even assuming the banner was initially visible—and it likely was not, particularly given the missing images throughout the capture—it was presented in inconspicuous font, in a manner that did not obtain consent or even provide notice. *Skullcandy*, 2026 WL 699819, at *16. Nor does the RJN

establish how long the banner displayed, whether it disappeared the moment a user clicked elsewhere on the page (it did), or whether rejecting cookies actually stopped non-essential tracking (it did not). ¶¶94-100, 105, 137-138. The exhibits to the RJN should not be considered at all; even if they are, are insufficient to establish consent at this stage.

**No Prior Consent.** Consent must be obtained before the violation occurs. *Javier*, 2022 WL 1744107, at *2. Here, consent is ineffective because Tracking Technologies begin intercepting user data the moment a visitor lands on the Website—before any banner is displayed, before any policy is presented, and before any button can be clicked. ¶¶55-58, 63-64, 98-100, 127-138.

**No Actual Consent.** To defeat privacy claims "consent must be actual." *In re Google, Inc*., 2013 WL 5423918, at *12 (N.D.Cal. Sept. 26, 2013). Actual consent requires disclosures that "explicitly notify" users of the "specific practice" at issue (*id*. at *13; *Campbell v. Facebook, Inc*., 77 F.Supp.3d 836, 847–48 (N.D.Cal. 2014)) and have "only one plausible interpretation." *Calhoun*, 526 F. Supp. 3d at 620. Here, there is no consent because a reasonable user would have not understood from Defendant's generalized notice of "use of cookies and our sharing of information with our partners" that the type and mass of data at issue here would be shared to profile them, and would be used in violation of federal law. *See Calhoun v. Google, LLC*, 113 F.4th 1141, 1151 (9th Cir. 2024). Nor is the non-judicially noticeable, inconspicuous banner, lacking a textual notice advising Plaintiff that he assented to the privacy policy, sufficient to find consent to the policy or notice of its contents. *Skullcandy*, 2026 WL 699819, at *16. This case is more like *Rusow*, 2025 WL 4657637, at *9 and *In re Meta Pixel Healthcare Litig.*, 647 F.Supp.3d at 791, 793-794, where general data sharing disclosures were insufficient to consent to health information disclosures and alleged HIPAA violations, than Defendant's other cited case, *Lakes v. Ubisoft, Inc*., 777 F.Supp.3d 1047, 1057 (N.D.Cal. 2025) appeal docketed, No. 25-2857 (9th Cir. May 2, 2025), which rejected the need for a notice "that Meta will collect Plaintiffs' 'video game titles combined with unique Facebook identifiers.'" Here, Defendant "does not even argue that its users assented to" the practice at the core of the complaint—violating the BSDR—and Defendant's general information sharing disclosures "do[] not come close to disclosing the massive information-sharing program…that the plaintiffs allege in the complaint." *In re Facebook, Inc*., 402 F.Supp.3d at 792; *see also Lynch*, 2025

WL 2224419, at *9 (finding generalized disclosures insufficient).

### III. Plaintiff States Privacy Torts.

Courts evaluating whether plaintiffs have stated a claim for invasion of privacy or intrusion upon seclusion under California law "consider the claims together and ask whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *Facebook*, 956 F.3d at 601. Because both inquiries are highly factual, "[c]ourts are generally hesitant to decide claims of this nature at the pleading stage." *In re Meta Pixel Healthcare*, 647 F. Supp. 3d at 799.

**Reasonable Expectation.** To determine whether a reasonable expectation of privacy exists, courts consider "the customs, practices, and circumstances surrounding the data collection, including the amount of data collected, the sensitivity of data collected, the manner of data collection, and the defendant's representations to its customers." *Hammerling*, 615 F. Supp. 3d at 1088. A reasonable expectation of privacy may exist when a one gains "unwanted access to data by electronic or other covert means, in violation of the law or social norms." *Facebook*, 956 F.3d at 601-02. Although Lenovo relies on *Hammerling*, that case supports Plaintiff's position. 615 F. Supp. 3d at 1089. In *Hammerling*, this Court found a reasonable expectation of privacy where Google collected usage data from millions of users in a way that permitted inferences about them and that the collection "plausibly defie[d] social norms" because it occurred through an undisclosed program while Google's own Privacy Policy was "ambiguous" as to whether such program occurred. 615 F. Supp. 3d at 1089-90. The same reasoning applies with greater force here. Plaintiff alleges Lenovo's Tracking Technologies collect comprehensive data about millions of users who have no reason to expect that such data is being harvested and allowed access in violation of federal law. ¶¶55-59, 63-66, 98-100, 127-133, 138, 215, 146-148, 232-36. Just like Google's policy in *Hammerling*, Lenovo's Policy does not disclose the data sharing program allowing intelligence authorities to build detailed dossiers on users. ¶¶78-80, 85, 116-119, 138. And, Plaintiff alleges that he was "not aware of [Lenovo's] conduct at all, *see* [¶¶63-64, 105, 117, 138], so [Lenovo's] disclosures have no effect on their reasonable expectations of privacy." *Riganian*, 791 F. Supp. 3d at 1086 (citing *Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 601 (N.D. Cal. 2021) ("[T]he mere existence of a privacy policy is not dispositive because users might lack actual or constructive

notice of the policy.”)).

Further, the Ninth Circuit has rejected the argument that a plaintiff must “identify specific, sensitive information” collected, holding that “a that [third parties] acquired an enormous amount of individualized data” suffices. *Id.* at 1087 (quoting *Facebook,* 956 F.3d at 603). Plaintiff’s privacy injury extends beyond the isolated collection of identifiers and browsing. The data the Tracking Technologies intercept is transmitted to covered persons subject to compelled disclosure laws, and is used to build comprehensive profiles, which no one reasonably expects. *Id.*; *Dellasala*, 2026 WL 1138358, at *4; *see also* ¶¶16-23, 63-70, 27-30, 142-145, 215, 232, 236.

While Lenovo argues that “ ‘[c]ontemporary internet browsing involves the collection of users’ data’” it fails to recognize that “users do not necessarily expect that data to be stored, transmitted to third parties, and employed for [surveillance] purposes.” *Ingraham,* 2026 WL 1755170, at *8 (quoting and distinguishing Lenovo’s *Hubbard*); *see also YETI Coolers,* 754 F. Supp. 3d at, 945 (distinguishing Lenovo’s *Thomas* because, unlike here, it involved “no allegation that the information turned over to the third party was being used for a distinct and independent commercial purpose”). Finally, the information is sensitive, §I, and there is no consent here, §II.E.

**Highly Offensive.** Determining the “offensiveness” of a privacy intrusion “requires a holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder’s motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive.” *Facebook*, 956 F.3d at 606. Accordingly, whether certain practices “could highly offend a reasonable person is an issue that cannot be resolved at the pleading stage.” *Id.*; *Toy*, 2024 WL 1701263, at *3 (same); *Hart v. TWC Prod. & Tech. LLC*, 526 F.Supp.3d 592, 602 (N.D. Cal. 2021) (similar). “Only if the allegations show no reasonable expectation of privacy or an insubstantial impact on privacy interests can the question of a highly offensive invasion be adjudicated as a matter of law.” *Gabrielli v. Haleon US Inc.*, 2025 WL 2494368, at *8 (N.D.Cal. Aug. 29, 2025) (cleaned up). Defendant has not made that showing. First, even if there was an ability to consent (there was not) “[a] reasonable factfinder could determine the alleged unauthorized collection of Plaintiff's information prior to her ability to reject tracking technologies was” highly offensive. *Anschutz Entertainment Group, Inc.*, 2026 WL 1278912, at

*8; *see also* § II.E (no consent). Further, the conduct alleged here—covert interception of Plaintiff's communications, transmission of that data to a covered foreign entity, and the resulting construction of behavioral dossiers for use in blackmail, coercion, and the targeting of Americans—is not "routine commercial behavior" and not is it disclosed. *Compare Hammerling,* 615 F. Supp. 3d at 1090[8] *with* ¶¶16-17, 55-59, 63-66, 69-70, 78-80, 85, 101-102, 138. Far less offensive allegations satisfy the pleading standard. *See, e.g., Gilligan*, 2026 WL 32259, at *2; *Semien*, 2026 WL 216333, at *6-7; *Riganian*, 791 F.Supp.3d at 1088; *Dellasala*, 2026 WL 1138358, at *4. Whether conduct the federal government has characterized as an "unusual and extraordinary threat to national security" is highly offensive to a reasonable person is not a question that can or should be resolved against Plaintiff at the pleading stage. *See Opperman v. Path, Inc.*, 87 F.Supp.3d 1018, 1061 (N.D.Cal. 2014). Even if the offensiveness inquiry could be resolved, it would be satisfied—each factor weighs decisively in Plaintiff's favor.

The likelihood of serious harm is high and recognized by the BSDR—the data went to an entity bound by intelligence laws, and can be used for profiling, blackmail and coercion. ¶¶2-8, 16-17, 27-30. The degree and setting of the intrusion is severe, intercepted browsing and identity data is aggregated across sessions into an identity-linked profile. ¶¶58-59, 65-66, 96-100, 101-102. Lenovo's motives and objectives are that it knew what the BSDR required, its industry group lobbied to narrow it, DOJ refused, and Lenovo proceeded anyway. ¶¶81-85. And, no countervailing interests or social norms render the intrusion inoffensive nothing justifies exposing Americans' data to a foreign adversary, and the BSDR's existence confirms the severity. ¶¶2-8..

## IV. PLAINTIFF STATES A CDAFA CLAIM.

**Damage or Loss.** Lenovo argues CDAFA standing requires damage to a computer system but a defendant's unjust profit from a plaintiff's data can constitute "damage or loss" under the

[8] Lenovo's other cited authority is also distinguishable because there, there was no allegation that "Meta knew that it was collecting third-party app users' geolocation data without their consent" because Meta was not responsible for the implementation of the subject tracking technology, whereas Lenovo knew it was doing so and implemented the Tracking Technologies. *Compare Tsering v. Meta Platforms, Inc.*, 2026 WL 89320, at *7 (N.D. Cal. Jan. 12, 2026) *with* ¶¶56-57, 63, 81-93, 127.

CDAFA, because California law requires disgorgement of unjustly earned profits in which Plaintiff has a stake. *Rack Room*, 2025 WL 2210002, at *3; *Tsering*, 2026 WL 89320, at *5; ¶¶189-93, 247.

**Data from a Computer Network.** Lenovo relies on *Allison v. PHH Mortg*., but that case found that the plaintiff had a claim under Section 502(c)(1). 2026 WL 1353827, at *8 (N.D. Cal. May 14, 2026). So does Plaintiff. ¶¶245, 247-49. Moreover, *Allison* considered only the entry "computer contaminant into his computer" not into a "computer network" or "system" which Plaintiff alleges and which satisfies 502(c)(2) and (8). ¶¶55-59, 98-100, 127-133, 244-249; *see also Famous Birthday*, 2025 WL 3049968, at *4 (502(c)(2) claim alleged where "Defendant introduced a computer contaminant into Plaintiff's networks that transmitted Plaintiff's data"); *Christensen*, 828 F.3d at 789 (statute requires only access and "unauthorized taking, copying, or use.").

**Without Permission.** Plaintiff did not consent. §II.E *supra*.

## V. PLAINTIFF STATES A UCL CLAIM.

**Statutory Standing.** Plaintiff pleads a benefit-of-the-bargain injury. *Kwikset*, 51 Cal. 4th at 323; ¶¶259-60. Lenovo had exclusive knowledge of the Tracking Technologies, the covered recipients, and the profiling, and the they were invisible to users. *Toy*, 2024 WL 1701263, at *2-3; *Donohue.*, 871 F. Supp. 2d at 921. Unlike the generic allegations in Lenovo's *Libman* and *Perez*, Plaintiff's UCL injury is grounded in his own alleged purchase, the specific data collected surrounding that transaction, and Plaintiff's specific allegations that he would not have made the purchase or would have paid less had he known that his data was being used in violation of federal law. *Compare Libman v. Apple, Inc.*, 2024 WL 4314791, at *18 (N.D. Cal. Sept. 26, 2024) and *Perez v. Romantix Online, Inc.*, 2025 WL 3085786, at *3 (N.D. Cal. Oct. 17, 2025) *with* ¶¶13, 94-105, 137-138, 259-261. *Hall* and *Medina* are also distinguishable because there, unlike here, the plaintiffs did not allege that they did not receive the benefit of their bargain. *Compare Hall v. Time Inc.*, 158 Cal. App. 4th 847, 855 (2008) and *Medina v. Safe-Guard Prods., Internat., Inc.*, 164 Cal. App. 4th 105, 114–15 (2008), *with* ¶¶259-261.

**Unlawful or Unfair.** Because Plaintiff's claims are adequately alleged, his unlawful claims premised thereon survives. Additionally, Lenovo fails to recognize that, independent of his claims, Plaintiff's unlawful claim is also premised on Lenovo's violation of the BSDR—which Lenovo is

not exempt from. ¶255; §II.D. Accordingly, an unlawfulness claim is alleged regardless of the other claims. Similarly, the unfairness claim is not "duplicative of Plaintiff's statutory claims" because plaintiff alleges a BSDR violation and common law claims. Furthermore, the unfair prong is independent. Covert surveillance and access to a foreign adversary is a harm not outweighed by any benefit and is unavoidable. *Smith*, 93 Cal. App. 4th at 718. Lenovo's *Pac. Steel Grp. v. CMC Steel Fabricators, Inc.*, sustained an unfairness claim and did not bar it premised on similar conduct as unlawfulness claims, as Lenovo urges. .2023 WL 6186679, at *7 (S.D. Cal. Mar. 10, 2023),

## VI. PLAINTIFF STATES AN UNJUST ENRICHMENT CLAIM.

As even Lenovo's authority recognizes, a claim for unjust enrichment may proceed as a quasi-contract claim for restitution. *Astiana*, 783 F.3d at 762. Lenovo retained the commercial value of Plaintiff's data, at his expense. *Lau v. Gen Digital Inc.,* 2024 WL 1880161, at *5 (N.D. Cal. Apr. 3, 2024), *aff'd sub nom. Karwowski v. Gen Digital, Inc.,* 2025 WL 3002610 (9th Cir. Oct. 27, 2025). Equitable relief may be plead in the alternative, and resolving adequacy of relief on the pleadings is inappropriate. *Adams v. Cole Haan, LLC*, 2021 WL 4907248, at *1 (C.D. Cal. Mar. 1, 2021). "[A]ll a plaintiff needs to allege is inadequate remedies at law to pursue equitable claims." *Compare Brown v. Van's Int'l Foods, Inc*., 2022 WL 1471454, at *13 (N.D.Cal. May 10, 2022), *with* ¶197.

## CONCLUSION

For the foregoing reasons, Defendant's motion should be denied. Alternatively, Plaintiff respectfully requests leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Dated: July 17, 2026

Respectfully Submitted,

*/s/ Victor J. Sandoval*
Victor J. Sandoval (SBN 344461)
**ALMEIDA LAW GROUP LLC**
3415 S. Sepulveda Blvd., Ste 1121
Los Angeles, California 90034
(562) 534-5907
victor@almeidalawgroup.com

David S. Almeida*
Stephanie T. Reed*
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue

Chicago, Illinois 60614
(708) 437-6476
david@almeidalawgroup.com
stephanie@almeidalawgroup.com

*Counsel for Plaintiff & the Proposed Classes*

**Pro Hac Vice Admitted*