United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SPENCER CHRISTY,
Plaintiff,

v.

LENOVO (UNITED STATES) INC.,
Defendant.

Case No. 26-cv-01133-CRB

**ORDER DENYING MOTION TO COMPEL ARBITRATION**

When Plaintiff Spencer Christy purchased a computer on www.lenovo.com (the "Website"), he completed the transaction by clicking on a "Place Order" button. Defendant Lenovo maintains that Christy, by clicking the button, accepted the Lenovo Sales Agreement, which included an Arbitration Agreement. Thus, after Christy brought a class action lawsuit against Lenovo, the company moved to compel individual arbitration. See Compl. (dkt. 1); Mot. (dkt. 30). Christy opposes the motion, arguing that he did not assent to any of the Sales Agreement's terms, including the Arbitration Agreement. See Opp'n (dkt. 39). Because Lenovo did not provide Christy with reasonably conspicuous notice of the Sales Agreement, and Christy never manifested his assent to it, the Court DENIES the motion to compel.

## I. BACKGROUND

In 2025, Christy decided to visit the Website to purchase a Lenovo gaming computer. Compl. ¶¶ 13, 95. To begin the purchase process, Christy added the computer to his online shopping cart and then clicked a button which read "Proceed to Checkout." Morey Decl. (dkt. 30-1) ¶¶ 5–6.

Christy was then brought to the first of three webpages that he had to visit to complete his purchase. Id. ¶¶ 7–9. On the first webpage, titled "Contact," Christy entered his contact information, which included his name, email address, and phone number. Id. ¶ 7. On the second webpage, titled "Delivery," Christy entered his delivery address and his preferred delivery method. Id. ¶ 8. On the third webpage, titled "Review & Pay," Christy verified his billing information, selected his payment method, and entered his credit card information. Id. ¶ 9. Below these payment entries, Christy was required to complete a reCAPTCHA by clicking a box which read "I'm not a robot."[1] Id. Below and to the right of the reCAPTCHA box was a button that read "Place Order." Id.

Christy asserts that when the final webpage loaded for him, it was too long for the entire page to appear on his screen. Opp'n at 3. Thus, Christy asserts that he had to scroll down to make the initially cut-off page elements become visible. Id. However, to complete his purchase, Christy was not required to scroll all the way down. Id. Instead, he only needed to scroll until the "Place Order" button—the lowest button that he was required to click on—became visible. Id. Christy asserts that he never scrolled past this button. Id. Had Christy scrolled further, he would have seen whitespace, a thin line, and more whitespace. See Morey Decl. ¶ 9. Then, at the bottom of the screen, the webpage would have had a Notice Statement that read "I have read and agree to the Privacy Policy, Lenovo Sales Agreement, & verify that I am over the age of 18." Id.

In his declaration, Lenovo Executive Director Kevin Morey provides an image showing the whole of the final webpage, with the Notice Statement at the bottom. Id.

[1] A reCAPTCHA requires a user to complete a task to help prove that they are a human.

United States District Court
Northern District of California




The underlined text in the Notice Statement was hyperlinked so that clicking it would redirect a user to a new webpage. Id. ¶ 12. The Lenovo Sales Agreement hyperlink redirected to a website showing the Sales Agreement, which included the Arbitration Agreement. Id. ¶¶ 14–21.

Because Christy asserts that the webpage was too large for his screen to show the entirety of the webpage at once, Christy asserts that he never saw any of the page elements below the "Place Order" button (the lowest button he needed to click on). Opp'n at 3. Christy provides a screenshot of what the webpage purportedly looked like on his screen. Id.



Although Christy's screenshot is low resolution, the image appears to accord with the better-quality image from the Morey Declaration. See Morey Decl. ¶ 9. The only difference is that the lowest page elements, including the Notice Statement, are not visible on Christy's screen. See Opp'n at 3.

On February 2, 2026, Christy brought a class action complaint against Lenovo for improperly using his and others' personal data. See Compl. On May 4, 2026, Lenovo moved to compel individual arbitration. See Mot. Christy has filed an opposition and Lenovo has filed a Reply. See Opp'n; Reply (dkt. 46).

## II. LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), courts are required to compel the arbitration of claims that are covered by an enforceable arbitration agreement. 9 U.S.C. § 3. "The FAA limits the court's role to 'determining whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue.'"

Berman v. Freedom Fin. Network, LLC, 30 F.4th 849, 855 (9th Cir. 2022) (quoting Lifescan, Inc. v. Premier Diabetic Services, Inc., 363 F.3d 1010, 1012 (9th Cir. 2004)). "In determining whether the parties have agreed to arbitrate a particular dispute, federal courts apply state-law principles of contract formation." Keebaugh v. Warner Bros. Ent. Inc., 100 F.4th 1005, 1013 (9th Cir. 2024) (quoting Berman, 30 F.4th at 855).

The party that moves to compel arbitration "bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." Id. (quoting Johnson v. Walmart Inc., 57 F.4th 677, 681 (9th Cir. 2023)).

## III. DISCUSSION

Lenovo argues that when Christy clicked the "Place Order" button, he accepted the terms of the Sales Agreement, including the Arbitration Agreement.[2] Mot. at 1. Christy argues that—because a reference to the Sales Agreement never appeared on his screen—he never assented to the Arbitration Agreement and is thus not bound by its terms. Opp'n at 1. The Court agrees with Christy because (1) Lenovo never provided reasonably conspicuous notice of the Sales Agreement and (2) Christy never unambiguously assented to its terms.

To form a contract under California law, "the parties must manifest their mutual assent to the terms of the agreement."[3] Berman, 30 F.4th at 855. "Whether the parties manifested their assent to a contract is determined by an objective reasonableness standard that considers the totality of the circumstances." Whalen v. NBA Props., Inc., No. 25-CV-01030-CRB, 2025 WL 1948591, at *3 (N.D. Cal. July 16, 2025) (citing Oberstein v. Live Nation Ent., Inc., 60 F.4th 505, 514 (9th Cir. 2023)). If a website operator cannot show

[2] The Arbitration Agreement requires that a customer "individually arbitrate 'any dispute' between Plaintiff and Lenovo 'related to' (1) Plaintiff's 'use of any Lenovo website,' (2) 'Lenovo's Privacy Policy,' (3) Plaintiff's 'purchase experience,' and (4) 'any aspect of the relationship' between Plaintiff and Lenovo." Mot. at 1 (quoting Morey Decl. at 7).

[3] The Sales Agreement has a provision selecting New York law for all matters not governed by the FAA, Morey Decl. at 7, but the Ninth Circuit has determined that "New York and California apply substantially similar rules for determining whether the parties have mutually assented to a contract term." Berman, 30 F.4th at 855 (internal quotation marks omitted). Neither party raises choice of law as an issue.



United States District Court
Northern District of California

that a consumer had actual notice of a contract, the contract will be enforceable only if: "[1] the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and [2] the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." Berman, 30 F.4th at 856.

**A. Reasonably Conspicuous Notice**

Lenovo argues that it provided reasonably conspicuous notice of the Sales Agreement. Mot. at 10. The Court disagrees.

The "reasonably conspicuous notice" standard "demands conspicuousness tailored to the reasonably prudent Internet user." Berman, 30 F.4th at 857. Courts should consider "[1] the visual design of the webpages and [2] the context of the transaction. Both aspects should be considered together. This means that courts should expect that a reasonable internet user is more vigilant in looking for contractual terms when the context of the transaction reasonably implies a contractual relationship." Godun v. JustAnswer LLC, 135 F.4th 699, 709 (9th Cir. 2025) (citation and internal quotation marks omitted).

**1. Visual Design**

The first factor in the conspicuousness inquiry is "the visual design of the webpage[]." Godun, 135 F.4th at 709. In this analysis, the court must determine whether a notice was "displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." Berman, 30 F.4th at 856. Some of the factors that courts consider are textual details like color, bolding, and text size. Id. In addition, courts look at the "overall design of the webpage," including the location of page elements in relation to the notice. Id. Given the many elements involved, "this inquiry is 'fact-intensive' and is informed by the 'totality of the circumstances.'" Godun, 135 F.4th at 709 (quoting Oberstein, 60 F.4th at 514).

Here, the key issue is the placement of the Notice Statement. According to both parties, a customer does not encounter any reference to the Sales Agreement during the checkout process until they see the bottommost text on the last of three webpages. See

United States District Court
Northern District of California

Morey Decl. ¶¶ 5–9; Opp'n at 3. According to Christy, the Notice Statement is not visible when the webpage loads, and a user can complete an order without the text ever appearing on their screen. Opp'n at 3. Christy asserts that "no phone or computer's aspect ratio[4] would show the entire webpage" and that "the webpages are so long that even users who zoom out are required to scroll the page to see beneath the 'Place Order' button." Id. at 5.

Because Christy asserts that his screen never displayed the Notice Statement, the Court must first determine whether a "reasonably prudent Internet user" would have encountered the Notice Statement anywhere on their screen.[5] See Berman, 30 F.4th at 856. After all, the conspicuousness of the Notice Statement's textual elements—like its font, color, or underline width—is irrelevant in a case where a user reasonably navigated the website, yet the notice remained entirely invisible to him. Thus, if Christy's description of his checkout process accords with how a reasonably prudent Internet user would have navigated the Website, Lenovo did not provide reasonably conspicuous notice of its Sales Agreement.

Although Christy might have encountered the Notice Statement if he had been maximally prudent, he need only have been reasonably prudent. See Berman, 30 F.4th at 856. A maximally prudent user might have scrolled all the way down on the webpage to see if he had missed any information below the "Place Order" button before placing his order. In doing so, he would have seen the Notice Statement, and could then have clicked on the Sales Agreement hyperlink to see the Arbitration Agreement. However, the "inquiry notice standard demands conspicuousness tailored to the reasonably prudent Internet user, not to the expert user." Id. at 857. Additionally, "[w]ebsite users are entitled

---

[4] A screen's aspect ratio refers to the screen's height and width dimensions.

[5] Lenovo argues that "Plaintiff's declaration detailing his particular experience is not relevant to the analysis" of what a "reasonably prudent Internet consumer" would have done. Reply at 3–4. But that is wrong, as the Court must consider what a reasonably prudent Internet would have done in Christy's position. See Meyer v. Uber Techs., Inc., 868 F.3d 66, 74 (2d Cir. 2017) (noting that "California contract law measures assent by an objective standard that takes into account . . . the context in which the offeree verbalized or acted") (emphasis added). Christy's declaration might not be dispositive, but it is certainly relevant.

to assume that important provisions—such as those that disclose the existence of proposed contractual terms—will be prominently displayed." Id. Thus, Christy should have been able to encounter the Sales Agreement without needing to take an action beyond what placing an order required.

Case law confirms this conclusion. The Ninth Circuit has held that online agreements are invalid "[w]here the link to a website's terms of use is buried at the bottom of the page or tucked away in obscure corners of the website where users are unlikely to see it." Nguyen v. Barnes & Noble Inc., 763 F.3d 1171, 1177 (9th Cir. 2014). The Ninth Circuit has also approvingly cited two cases that are squarely analogous to this case. In the first case, the Second Circuit "refus[ed] to enforce terms of use that 'would have become visible to plaintiffs only if they had scrolled down to the next screen.'" Id. (quoting Specht v. Netscape Communs. Corp., 306 F.3d 17, 23 (2d Cir. 2002)). In the second case, the court did not enforce terms because the plaintiff "could not even see the link to [the terms and conditions] without scrolling down to the bottom of the screen—an action that was not required to effectuate her purchase." Id. (quoting Hines v. Overstock.com, Inc., 668 F. Supp. 2d 362, 367 (E.D.N.Y. 2009)). The Court follows these analogous cases and holds that the Sales Agreement was not reasonably conspicuous.

Lenovo's arguments to the contrary are unavailing. Although Lenovo argues that the Notice Statement's textual elements were reasonably conspicuous, Mot. at 10–11, Lenovo never directly refutes Christy's core assertion: the Notice Statement never appeared on Christy's screen. See Opp'n at 3. In response to this assertion, Lenovo argues that it "is required to prove only inquiry notice," not "actual notice." Reply at 3. Here, Lenovo correctly states its burden, but incorrectly suggests that it meets it. To satisfy the inquiry notice standard, Lenovo must provide "reasonably conspicuous notice of the term and conditions." See Berman, 30 F.4th at 856. But a notice never appearing on one's screen is the antithesis of conspicuousness. Even assuming that the Notice Statement is reasonably conspicuous when it appears, to meet its burden, Lenovo would

United States District Court
Northern District of California

need to assert that the Notice Statement appeared on Christy's screen.[6] Additionally, although Lenovo says that "[c]ourts have found analogous notices to be reasonably conspicuous," none of Lenovo's supposedly analogous cases involve an assertion by the user that the notice never appeared on their screen. See id. at 11. Because that point is dispositive here, Lenovo's cited cases are distinguishable.[7]

### 2. Context of the Transaction

The second factor in the conspicuousness inquiry is whether "the context of the transaction reasonably implies a contractual relationship." Godun, 135 F.4th at 709. When this is so, "courts should expect that a reasonable internet user is more vigilant in looking for contractual terms." Id.

Here, Christy's online purchase of an expensive gaming computer should have made him more concerned with whether there was a corresponding sales agreement.[8] That concern might have permitted a notice to be less conspicuous than otherwise required. However, Christy maintains that his screen never displayed the notice at all. Opp'n at 3. Although Christy could be expected to read a notice if his screen showed one, "consumers cannot be expected to ferret out hyperlinks to terms and conditions." See Nguyen, 763 F.3d at 1179. Accordingly, the Notice Statement was not reasonably conspicuous.

### B. Unambiguous Manifestation of Assent

Lenovo next argues that Christy unambiguously manifested his assent to the Sales

---

[6] Lenovo argues that the Morey Declaration shows how the webpage appeared to Christy because "the screenshots and [] descriptions demonstrate the 'purchase process on December 11, 2025,' the date of Plaintiff's purchase." Reply at 3 (quoting Morey Decl. ¶¶ 5–13). But Christy does not assert that the Morey Declaration shows the wrong purchase process. Instead, Christy asserts that this process did not require that the Notice Statement appear on his screen. Opp'n at 3.

[7] It is not always impermissible for a notice to be beneath the lowest must-click button on a webpage. For instance, in Keebaugh, the Ninth Circuit held that a notice "directly beneath" the "Play" button on a sign-in page provided "conspicuous notice that a reasonably prudent Internet user would have seen." 100 F.4th at 1020 (internal quotation marks omitted). But Christy, unlike the plaintiff in Keebaugh, asserts that the notice statement never appeared on his screen, see Opp'n at 3, and the Notice Statement here was not "directly beneath" the "Place Order" button.

[8] According to the screenshot in the Morey Declaration, the "estimated total" for Christy's purchase was $3,720,59. Morey Decl. ¶ 9.

Agreement. Mot. at 11. Not so.

To assent to an online agreement, a website user must "take any action that unambiguously manifest[s] their assent to be bound by the terms." Berman, 30 F.4th at 857. Courts routinely enforce "clickwrap" agreements, or those where the website "presents users with specified contractual terms on a pop-up screen and users must check a box explicitly stating 'I agree' in order to proceed." Id. at 856. However, courts are more reluctant to enforce "browsewrap" agreements, or those "in which a website offers terms that are disclosed only through a hyperlink and the user supposedly manifests assent to those terms simply by continuing to use the website." Id. Nonetheless, these terms help to guide courts, and the "precise label [of an agreement] does not matter" so long as the user unambiguously manifested assent. Kamath v. Coinbase, Inc., 2024 WL 950163, at *4 n.3 (N.D. Cal. 2024).

Although Lenovo argues that "the Sales Agreement is a clickwrap," the agreement is a browsewrap. See Mot. at 10. A clickwrap agreement is "formed when 'a website presents users with specified contractual terms . . . and users must check a box explicitly stating 'I agree' in order to proceed.'" Berman, 30 F.4th at 856. Christy never checked anything indicating that he assented to the Sales Agreement. In fact, because Christy went through the entire checkout process without ever seeing a reference to the Sales Agreement, it cannot be a clickwrap, as in such agreements, "website users are required to click on an 'I agree' box after being presented with a list of the terms." See Lee v. Ticketmaster L.L.C., 817 Fed. Appx. 393, 394 (9th Cir. 2020) (emphasis added) (quoting Nguyen, 763 F.3d at 1175–76). The Sales Agreement is a browsewrap because it is "posted on the website via a hyperlink at the bottom of the screen." See id.

Although courts are more reluctant to enforce browsewraps, Lenovo could still prevail if it showed that Christy took some action—akin to checking an "I agree" box—that unambiguously manifested his assent to the Sales Agreement. However, Christy did not take such an action. Lenovo argues that "[b]y affirmatively selecting 'Place Order,' Plaintiff manifested his assent that '[he] ha[d] read and agree[d] to the . . . Lenovo Sales

United States District Court
Northern District of California

Agreement' as stated directly below the 'Place Order' button." Mot. at 11 (quoting Morey Decl. ¶¶ 9–10). Lenovo assumes that, because the "Place Order" button is near the Notice Statement, Christy's clicking of the button unambiguously manifested his assent to the Sales Agreement. But "[e]ven strongly implicit advisement isn't enough—a webpage must explain that certain actions will be understood by the offeror to signal assent to contractual terms. And it must identify what, exactly, those actions are." Godun, 135 F.4th at 711 (citation omitted).[9]

Mere proximity does not explain—and certainly does not "exactly" explain—that by clicking a button, the user agrees to a nearby notice. See Nguyen, 763 F.3d at 1778 n.1 (explaining that reliance solely on the "proximity of the hyperlink to enforce a browsewrap agreement" is insufficient). Instead, the notice must precisely explain that taking a particular action will signal assent to a specific agreement. For instance, a notice that reads "By tapping 'Play,' I agree to the Terms of Service" makes clear that, by pressing the "Play" button, the user agrees to the Terms of Service. See Keebaugh, 100 F.4th at 1014. Similarly, a notice reading "By creating an [] account, you agree to the TERMS OF SERVICE & PRIVACY POLICY" unequivocally advises that, by making an account, a user assents to the stated agreements. See Meyer, 868 F.3d at 76, 79 (applying California law).

In contrast, Lenovo's Notice Statement does not explain what specific action will manifest assent to the Sales Agreement. The Notice Statement reads "I have read and agree to the Privacy Policy, Lenovo Sales Agreement, & verify that I am over the age of 18." Morey Decl. ¶ 9. Unlike the notices shown before, this notice lacks any clause that explains how a user will manifest assent.

Additionally, although Lenovo points to language in the Sales Agreement itself,

[9] Although Lenovo cites Van Den Heuvel v. Expedia Travel, the case is inapposite. There, the notice read "By selecting to complete this booking I acknowledge that I have read and accept the above Rules & Restrictions, Terms of Use and Privacy Policy." Van Den Heuvel v. Expedia Travel, Case No. 2:16-cv-00567-JAM-AC (E.D. Cal. 2017), Exhibit A (dkt. 63-2) at 5 (emphasis added). Here, however, the Notice Statement has no analogous clause explaining how Christy would show that he read and accepted the Sales Agreement.

United States District Court
Northern District of California

Lenovo cannot merely show that the Sales Agreement is well worded. See, e.g., Mot. at 5 (discussing the language of the Sales Agreement preamble); Reply at 8 (arguing that the Sales Agreement preamble provides the "precise explicit advisement that Plaintiff contends is missing"). Instead, Lenovo must show that it informed Christy that (1) there is an agreement and (2) by taking a particular action, Christy assented to it. See Berman, 30 F.4th at 856. By ignoring these notice concerns and going straight to the language of the Sales Agreement, Lenovo puts the cart before the horse.[10]

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES the motion to compel arbitration. The Court is aware that Lenovo has also filed (1) a motion to strike class allegations (dkt. 31) and (2) a motion to dismiss the complaint (dkt. 32), both of which were on hold while the Court adjudicated the motion to compel arbitration. Per the parties' Second Stipulation (dkt. 36), the Court will next turn to the motion to dismiss, and then, "unless [the motion to dismiss] is granted in full with prejudice," resolve the motion to strike.

**IT IS SO ORDERED.**

Dated: November 16, 2026

CHARLES R. BREYER
United States District Judge

---

[10] This same issue applies to Lenovo's argument about Christy not "opt[ing] out of the Arbitration Agreement." See Opp'n at 7. Even though the Arbitration Agreement had a provision stating that Christy could "'send a written notice . . . tell[ing] Lenovo that [he is] rejecting or opting out' of the Arbitration Agreement," because Christy asserts that he never encountered any reference to the Sales Agreement, his failure to invoke one of its terms is irrelevant. See Mot. at 7 (quoting Morey Decl. at 8).